HANNAH McCLAVE v. MUTUAL RESERVE FUND LIFE AS-
SOCIATION

HANNAH McCLAVE, ADMINISTRATRIX OF JAMES McCLAVE,
v. THE SAME.

1. A policy upon the life of A, insuring the payment of a sum of money to B on the death of A, declared on its face that it should not be binding until it was delivered to A in good health. *Held*, that it did not become binding by being delivered to B after A's death.

2. An agent of the insurance company, who in fact had no authority to make, alter or discharge contracts on behalf of the company, and whose lack of authority was declared in the policy, could not make such a policy as is above mentioned binding upon the company, by delivering it to B after A's death, with knowledge of A's death.

3. By approval and acceptance of his application for membership in, and insurance by, a mutual association, A became entitled to a policy of insurance on actual payment of his first annual dues while he was in good health. *Held,* that without a tender of those dues while he was in good health no action could be maintained to recover the amount of the contemplated insurance.

---

On contract. On case certified from the Essex Circuit Court.

Argued at November Term, 1892, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, DIXON and REED.

For the plaintiff, *Frederic W. Stevens.*

For the defendant, *J. Frank Fort.*

The opinion of the court was delivered by

DIXON, J. These suits are brought upon an alleged contract of life insurance, and are resisted on the ground that no such contract was made.

*First.* The plaintiff seeks to maintain her suit upon a policy dated and sealed by the defendant January 13th, 1890, and delivered to the plaintiff January 14th, 1890, by one Diefendorf, who was an agent of the defendant.

According to the terms of this policy the defendant agreed to pay to the plaintiff $5,000 on the death of James McClave, her stepson, upon certain conditions stated in the policy. In fact, James McClave had died January 11th, 1890, two days before the policy was sealed.

In our judgment this policy never acquired any vitality against the defendant.

On its face it shows that it was intended to be issued to James McClave, who had applied to become and was, by the proper issuing of the policy, to be made, a member of the

defendant corporation, and it expressly declares that the contract embodied in it is not to be binding until the policy is delivered to said member in person during his life and while in good health.

In view of this provision it is impossible to hold that the contract could be created by the delivery of the policy after the death of James McClave, unless the defendant has in some way abrogated that feature of the arrangement. *Missel- horn* v. *Mutual Reserve Fund Life Association,* 30 *Fed. Rep.* 545.

The plaintiff insists that such a change was effected by the fact that Diefendorf knew of McClave's death when he delivered the policy to the plaintiff; that as Diefendorf must have intended his delivery to be a valid act he must have intended to waive this inconsistent provision.

On this point the plaintiff's contention has force, if Diefendorf had authority, real or apparent, to bind the defendant, otherwise it has not.

The only evidence of Diefendorf's authority which the case presents is in writing, and consists of the agreement between him and the defendant dated April 1st, 1889. That instrument, after defining in limited terms his power as "general state agent" of the defendant in New Jersey, proceeds as follows:

"*Fifth.* The authority of said agent shall extend no further than is above stated. He shall not make, alter nor discharge any contract." This lack of power is made distinctly apparent in the policy itself, which says: "No agent of the association has authority to make, alter or discharge contracts, and no alteration of the terms of this contract shall be valid, unless such alteration shall be in writing and signed by the President or Vice-President and one other officer of the association."

The conclusion seems inevitable that Diefendorf could not bind the defendant to any stipulations other than those set forth in the policy. *Caton* v. *American Life Insurance and Trust Co.,* 4 *Vroom* 487.

Consequently this policy never became a valid contract.

*Secondly.* The plaintiff seeks to maintain her suit upon a contract preliminary to the issuance of the policy.

The pertinent facts are these: On December 14th, 1889, James McClave made application in writing to the defendant to become one of its members and to have issued to him a certificate or policy of insurance on his life in the sum of $5,000, payable on his death to the plaintiff. The application contained this clause: "The applicant further agrees that under no circumstances shall the certificate or policy hereby applied for be in force until the actual payment to, and acceptance of, the first annual dues by the association and actual delivery of the certificate or policy to the applicant, with a receipt for the payment of the first annual dues signed by the President, Secretary or Treasurer of the Association, during the lifetime and good health of the applicant." On presenting this application James McClave paid the defendant $20 as an admission fee (not annual dues), and the defendant gave to him a writing of which the following is a copy:

NOTICE TO APPLICANT.

Should a policy of insurance not be received by you within twenty days, or your money not be returned to you upon presentation of this receipt, you are requested to notify the Home Office, stating the amount paid, when and to whom paid.

MUTUAL RESERVE FUND LIFE ASSOCIATION,

POTTER BUILDING, 38 PARK ROW,

*Amt. Received.*       New York.       *Amt. applied for.*
$...............                                    $5,000.

*Received* from JAMES McCLAVE, of Newark, N. J., twenty dollars, for the Admission Fee, upon an application to the MUTUAL RESERVE FUND LIFE ASSOCIATION, for a Policy of Insurance for five thousand dollars, subject to its provisions, and the Constitution or By-Laws, rules and regulations of the Association.

The above payment is on account of The Admission Fee, $20.

It is hereby expressly understood and agreed, that if the application be not approved and accepted by the officers at the Home Office of the Association, in the City of New York, it shall be held that no benefits have ever been created or acquired under this receipt, and the amount paid hereon will be refunded by me on return of this receipt.

Dated at Newark, Dec. 14, 1889.

I. B. FAITOUTE, *Agt.*

On January 9th, 1890, the application was approved and accepted by the officers at the home office of the association, and McClave was then alive and in good health.

The plaintiff insists that under the language of the receipt of December 14th, 1889, it must be inferred that some benefits were created and acquired on January 9th, 1890, by the approval and acceptance of the application as above stated, and that these benefits are such as will support the action.

The contention that certain benefits thus arose is at least plausible and perhaps is sound. But the nature of those benefits must be ascertained from the prior negotiations of the parties. Looking at them it will be seen that the benefits to accrue could only be a right to a contract of insurance according to the terms of the application and receipt. No other terms had then been agreed upon by the parties.

Those terms, as we have noticed, required the actual payment of the first annual dues by the applicant, and the delivery of the policy by the association, during the good health of the applicant.

These obligations were concurrent and therefore subject to the common rule of law, that neither could legally demand performance by the other without himself offering to perform.

Hence the benefit accruing to the applicant, on approval of his application, was a right to tender his annual dues while he was in good health, and demand a policy. Had he made such a tender he would have been entitled to a policy, and that might have been deemed equivalent to a contract of insurance, upon which, after loss, a recovery might be had at law. *Taylor* v. *Merchants Fire Ins. Co.*, 9 *How.* 390, 405. But no such tender was made, and consequently no right of action came into being.

The Essex Circuit Court is advised that neither upon the policy nor upon the receipt is the plaintiff entitled to recover.