### ANNA CANNON

#### *v.*

### THE FARMERS' MUTUAL FIRE ASSOCIATION OF WARREN COUNTY, N. J.

[Filed April 25th, 1899.]

1. Though the by-laws of a mutual insurance company contemplate assignments of policies in writing, and the policies provide that assignments shall be in accordance with the by-laws, an assignment not in writing will carry the equitable title to a policy.

2. Under a by-law of a mutual insurance company, attached to a policy, authorizing the directors to receive as a member an assignee thereof on his giving a new note, no acts or declarations of theirs tending to create a membership without his giving such note can operate as an estoppel against the company.

3. The acts and declarations of the officers of a mutual company made after loss in course of adjustment, recognizing membership of insured in the company, do not estop the company to assert he never was a member, he not having recognized any liability as a member, nor relied on such conduct as the basis of subsequent action.

On demurrer to amended bill.

*Mr. William H. Morrow,* for demurrant.

*Mr. George M. Shipman,* for complainant.

Cannon v. Farmers' Mutual Fire Ass'n.

EMERY, V. C.

The complainant files her bill to recover from the defendant, a mutual insurance company, the loss sustained in the destruction by fire of buildings insured by a policy originally issued by the defendant to one Nancy A. Dill, and which were owned by complainant at the time of the fire.

The right to recover for the loss in equity is based upon the general claim that the complainant cannot recover at law upon the policy, because the assignment to her was not made pursuant to the by-laws, which were made part of the policy, and is equitable only, and that upon the facts alleged in the bill and amended bill, the defendant is estopped in equity from denying complainant's right to recover under the assignment or as a member of the company. A demurrer to the original bill was sustained with leave to complainant to amend, and the amendments filed in some respects contradict or qualify the statements in the original bill, so that the entire case of complainant is somewhat informally presented, but, construing the pleadings in the most favorable aspect allowed for complainant, her case is substantially as follows:

On September 14th, 1898, defendant issued to Nancy A. Dill, then the owner of the premises and buildings in question, a policy, which is set out in the bill in full, insuring the buildings for $4,000 for ten years. This policy was issued to Dill as a member of the association, and recites, among other things, her membership, the deposit with the treasurer of her note for $200, with security, and the payment of the percentage on insurance, as the consideration of the insurance, and that the insurance is made on the terms mentioned in the company's act of incorporation passed March 22d, 1860, and under and subject to the by-laws, rules and regulations of the company annexed to the policy, which are to enter into and form part of the contract of insurance. The by-laws are annexed to the policy and set out in the bill, but the provisions of the charter, which is a private act, are not set out in the bill. The policy itself also contains this provision in reference to assignments: "Any assignment or transfer of said policy shall render it null and void against said

company unless assigned according to the by-laws and regulations of said company hereto annexed." On April 1st, 1892, Nancy A. Dill sold and conveyed the premises to George Marlatt and Wakely J. Marlatt, and also assigned the policy to these purchasers by written assignment dated April 11th, 1892. Part of the purchase-money—$5,000—was secured by a bond and mortgage on the premises, and the purchasers, by a written assignment dated April 12th, 1892, assigned the policy to Nancy A. Dill, the mortgagee, "as collateral security" on this bond and mortgage. Both of these assignments were approved in writing on April 15th, 1892, by Lewis Merrell, the secretary of the company. The bill also alleges that both of these assignments were approved by the company and that they were made in accordance with the by-laws. In reference to the assignments of policies, the by-laws attached to the policy provide as follows:

"ART. 7. Policies assigned as collateral security or transferred by sale may be forwarded by the surveyor to the secretary for approval and entering on the record, and where transferred by sale the surveyor shall take a new note from the assignee or purchaser, with approved security of same amount as note first given, and forward with policy; and the surveyor shall also collect the fee for approving transfer and forward to secretary with policy and new note, and shall be entitled to not less than fifty cents for his services, to be paid by the assignee or party sending such policy for transfer.

"ART. 24. Should any building insured in this company be sold, the purchaser thereof may be received, by consent of the board of directors, as a member of this company, in case the policy on said building be duly assigned to him and notice of such assignment be given to the secretary within thirty days next after such sale and transfer, the assignee giving new note and security to the satisfaction of the directors."

Whether the Marlatts gave a new note as required by the by-laws does not specially appear, but the general allegation of the bill, that the assignments to the Marlatts were made as required by the by-laws, is sufficient basis for holding (on demurrer) that the note of the Marlatts was given, and that they were received as members of the company in the place of Nancy Dill, and that at the time of the subsequent transactions set out in the bill and which gave rise to the present dispute, the Marlatts were insured

under. the policy as owners of the property and as members of the company succeeding to Mrs. Dill, and that Mrs. Dill was insured as mortgagee, holding the policy as collateral security for payment of the bond of the Marlatts. The bill and amended bill now further show that on July 23d, 1896, the Marlatts sold the property to the complainant, by deed then delivered, and the Marlatts agreed on that day that the policy of insurance (which was in Mrs. Dill's possession) should be assigned to complainant. Complainant, with the Marlatts, went to Mrs. Dill's on the same day "to recover the policy," and complainant then paid to Mrs. Dill the amount due on the bond and mortgage, and after the payment Mrs. Dill delivered the mortgage to complainant, with the seals torn off and satisfaction endorsed upon it. She also then delivered to complainant the policy, not, however, making any written assignment of it. The policy in this condition was then taken by complainant (or on her behalf) to John R. Carr, the president of the company, who was then informed that complainant had purchased the property, that she had paid off the Dill mortgage and owned the policy, and inquiry was made whether a new policy would be necessary or whether the old one would do, and what assignments were necessary by the Marlatts or Mrs. Dill. Carr informed complainant that a new policy was not necessary, but that the policy must be sent to Merrell, the secretary, in order that he (Merrell) might make the necessary assignments "to transfer the title of said policy to complainant," and Carr took the policy to transmit to the secretary for assignment, assuring complainant that her interest would be protected and her property would be perfectly safe from that time. On inquiry made of Carr about a week later on complainant's behalf, Carr said the policy had not been received from Merrell, and the complainant's representative then made an unsuccessful effort to find Merrell. Subsequent to the first interview with Carr, the president, and on July 31st, 1896, as appears by the amended bill, complainant had the mortgage canceled of record and on this day the secretary, Merrell, was informed of complainant's purchase of the farm from the Marlatts; that she was the owner of

the property and had paid off and canceled of record the Dill mortgage, and wished to obtain the insurance policy and have a proper assignment and transfer of the policy made to her, or to have a new policy, if that was necessary, and informed him that the president said that a new policy was not necessary. The original bill alleges that on the same day the policy was delivered to complainant by Mrs. Dill, the latter executed an assignment thereof to the complainant which had been previously prepared by the secretary of the company, and that the assignment and policy were both handed over to the secretary and the company was informed that complainant was the owner of said mortgage and that she was the owner of the property upon which the mortgage was a lien, and that several days afterwards the policy was delivered back with the assignment from Mrs. Dill to complainant attached and approved by the company. According to this statement of her rights, complainant represented to Merrell that she was the owner both of the mortgage and the property, saying nothing of the cancellation of the mortgage, while in the amended bill the allegation is made that before the return of the assignment of the policy approved, she had informed the secretary that she had canceled the mortgage. Assuming for the present purposes that the rights as shown in the amended bill are to control, it does not appear that complainant, in stating to Merrell that Carr, the president, had said a new policy was not necessary, also informed him that the cancellation of the mortgage was made (as appears by the amended bill) after the first interview with Carr. The secretary, according to the amended bill, having been informed that the mortgage was paid off and canceled by complainant, told complainant's messenger that he knew complainant was the owner of the property, that the old policy was the only one necessary, and that he would make a legal and proper assignment and transfer of the policy; that the company would protect the interests of the complainant, and he then made on the books of the company an entry of the sale, and informed complainant's representative that complainant "would be received as a member of the company in place of the said George and Wakely Marlatt, and that the board of

directors consented thereto." The secretary, at the same time, asked complainant's address in order that he might send notice of assessments, which address was then written down by the secretary, and he then said the assignment had not been prepared because of Mrs. Dill's absence and that as soon as the assignment was perfected he would send the policy to complainant, and that the rights of complainant would be protected and if there was any loss by fire she would be paid.

Two weeks later the secretary sent to the complainant by mail the old insurance policy, with an assignment thereof in writing by Nancy A. Dill, attached to the policy, dated August 14th, 1896, transferring and setting over to complainant and her assigns all her right, title and interest in the policy and all benefi s to be derived therefrom, *as collateral security on a bond.* This assignment was approved on the same date by Merrell as secretary of the company. No written assignment by the Marlatts appears to have been *executed.* The original bill further alleges

" that the company accepted complainant as a member of said company, in the place of the said Nancy A. Dill and of the said George Marlatt and Wakely J. Marlatt, and that the consent of the board of directors was given that complainant should become a member of said company."

Complainant accepted the policy with the assignment as approved by the secretary, believing that her property was insured by the company. The buildings insured were destroyed by fire on February 2d, 1897, about five months after complainant's receipt of the policy, with a loss as complainant claimed of $2,075, for which she duly presented her claim to the company. The president and secretary of the company with a director visited the premises after the fire, and the secretary in the presence of the president and director then told complainant that her policy was good on the other buildings insured, and that her loss would be paid. These officers then offered $1,400 in settlement which complainant afterwards refused, and subsequently a committee of the board appointed to adjust her loss, offered a less sum ($1,600), which complainant also refused to accept, and

about March 11th, 1897, complainant received a letter from the secretary, bearing that date, offering $1,600, as authorized by the company, as a cash settlement, and if this offer was not acceptable complainant was requested to consider the letter a notice under article 17 of the policy, that the company would rebuild. A decision was requested by the 16th, in time for the meeting of the directors on the 17th. About March 24th complainant met the committee of the directors for the purpose of adjustment, the directors endeavoring to induce complainant to take the sum offered ($1,600) and notified her that unless she accepted that the company would rebuild. After complainant's refusal to accept this offer (whether at the same meeting or subsequent to a subsequent demand by complainant that the company proceed to rebuild, is somewhat uncertain), the directors notified complainant that the policy was null and void, and this was the first claim or intimation received by complainant of any defect in the policy.

Complainant in her amended bill admits a failure to comply with the by-laws attached to the policy in two respects, first, a failure to procure a written assignment from the Marlatts of their interest in the policy, and second, the failure to give a new premium note, in order to be insured as a member of the company, on the purchase from the Marlatts. The facts as disclosed in the bill and amended bill are, however, relied on as estopping the company in a court of equity from setting up these failures to comply with the by-laws, as a defence to the policy, and a decree is asked declaring that complainant is a member of the company, insured under the policy and for a payment of the loss sustained.

Several grounds of demurrer are specified, the two which go to the whole merits of the bill being the failure of complainant to show a written assignment from the Marlatts and her failure to give a new premium note, with security. It is claimed on the part of the defendant that both of these requirements were, by the terms of the policy itself, conditions precedent to the complainant's right to become a member on purchase of insured property; that these conditions were, by the policy itself, im-

posed by the company upon the directors and officers of the company as well as upon the purchaser, and that the company, therefore, cannot itself be estopped from availing itself of the failure to comply with these conditions precedent, by reason of acts or declarations of officers or directors, set up in the bill.

As to the first of these objections, the necessity of a written assignment from the Marlatts, in order to become a member on alienation, this failure will not bar a recovery in equity. Under the by-laws, which contemplate a written assignment, the legal title in an assignee of the policy can be perfected only by a writing, but there was an equitable assignment of the policy by the Marlatts to complainant, created by the delivery of the policy by Mrs. Dill to complainant, by the direction of the Marlatts, with an agreement on their part to execute an assignment. So far as complainant's rights depend upon the form of an assignment from the Marlatts, she has an equitable title only, and is upon that basis entitled to proceed in equity for relief. *Combs v. Shrewsbury, &c., Insurance Co., 5 Stew. Eq. 512 (Chancellor Runyon, 1880).*

The serious question in the case is the second ground of demurrer referred to, viz., that the company in equity is not estopped by the acts of its officers or directors which are set out in the bill from setting up the failure of complainant to give a new note without security, as a bar to relief, under the policy and by-laws. This is not a stock company but a mutual company, in which the premium notes constitute the basis of the security of policyholders, and the provisions of the charter and by-laws in reference to these notes and membership as based thereon, must therefore be considered fundamental. Alienation, by an original member, of property insured in a mutual company does not necessarily discharge him from his liability on his note for subsequent losses, for the directors may, under some charters, accept the new member, retaining the note of the original member as security. *Durar v. Insurance Co., 4 Zab. 193.* Whether the provisions of the by-laws now in question, which require a new note to be given, unreasonably or unlawfully restrict the powers which the directors might have under the

charter of the company to receive members upon alienation, upon the security of the original note, is not a question in the case. In the first place the charter has not been set out, and, as it is not a public act, it cannot be judicially noticed. *Black* v. *Delaware and Raritan Canal Co., 9 C. E. Gr. 455, 480 (Errors and Appeals, 1873)* And in the second place complainant's present equitable case is based upon her acceptance of the policy which contained these by-laws and on their validity. The membe s of the company in this case by the policy under which complainant claims fixed the conditions of a purchaser of insured property, becoming a member in a manner which was not only a notice to the purchaser, but also a restriction on the power of the directors. "The purchaser may be received by consent of the board of directors as a member of the company, the assignee giving new note and security to the satisfaction of the directors." These by-laws as to the giving of a new note, restrict the powers of the directors, and it is not within their power to bind the company by a waiver of them upon an application for membership. Upon this point of waiving fundamental conditions of the charter or by-laws, relating to the acts which constitute membership, the case is controlled by the decision in *Belleville Mutual Insurance Co.* v. *Van Winkle, 1 Beas. 333, 342 (Errors and Appeals, 1858)*. This case holds that in reference to mutual companies, where the validity of the policy depends upon membership, the conditions as to membership (such as giving premium notes) which are imposed by the charter and by-laws, cannot be dispensed with, nor has any purchaser of property the right to rely on assurances that they have been or may be dispensed with. The same principle is asserted by Chief-Justice Shaw in *Fogg* v. *Insurance Co., 10 Cush. 337*. It is claimed, however, by complainant's counsel, that even if it be admitted that neither directors nor officers have, as between them and the company, the right to waive the giving of a new note, still the company may be held liable where no new note has been given, if the circumstances show that the directors have failed to act in good faith toward the complainant, and that by their fault she was prevented from giving the new note. This

is the rule applied by Mr. Justice Elmer, court of errors and appeals, in the decision of the above case, which was one where the provision of the charter relied on as a defence (the delivery of a premium note before membership) was not known to the claimant, and the same principle was applied in the later case of *Miller* v. *Hillsborough Insurance Co., 17 Stew. Eq. 224, 227,* where the company was estopped from availing itself of a by-law which was not contained in a copy of the by-laws annexed to the policy and was not known to the assignee. Mr. Justice Potts, however, in *Belleville Insurance Co.* v. *Van Winkle, 1 Beas. 346,* puts the decision solely upon the ground that the provisions of the charter as to membership cannot be dispensed with. Where the applicant for insurance or assignee has notice in the policy itself of an express limitation of the powers of the officers of a company, either by its charter, by-laws or the policy itself, the general rule is that no waiver against the company in reference to the acts forbidden, can arise from the acts of these agents themselves, whose powers are thus limited, in attempting to waive the express provisions of the charter, by-laws or policy. *Catoir* v. *American Life Insurance Co., 4 Vr. 487 (Errors and Appeals, 1868); McClave* v. *Mutual Reserve Fund Association, 26 Vr. 187 (Supreme Court, 1893),* and cases cited in *Redstrake* v. *Cumberland Insurance Co., 15 Vr. 302.*

As was said in *Catoir* v. *American Life Insurance Co., 4 Vr. 491,* the insured by accepting a policy expressly limiting the powers of agents, is estopped, as against the company from setting up the acts of those agents which violate the provisions. And where the powers of officers or agents to create a membership are to the knowledge of the assignee thus expressly limited, no membership can be created on the theory of estoppel by these acts or declarations of these officers, which extend only to the original creation of the membership in violation of the express provision. To hold such acts or declarations valid for the purpose of originally creating the membership, either on the ground of waiver or estoppel, would, in effect, annul not only the express provisions of the charter or by-laws in relation to membership,

but also the express contract made between the parties by the delivery and acceptance of the policy.

Subsequent to the original invalid attempt to create a membership by the acts of officers or agents, whose acts which are relied on to create the membership are in violation of the policy itself, the company may, no doubt, by the acts of these officers or others, so conduct itself as to estop it from denying the relation of membership equitably created by these subsequent acts. But in the present case no acts of the company or its officers, up to the time of the loss, other than the original acceptance of complainant as a member by the acts and declarations of these officers, whose limited powers complainant knew from the policy, are set out in the bill to show that she was accepted as a member. There is an allegation in the original bill that the company accepted complainant as a member in the place of the Marlatts and Mrs. Dill, and that the board of directors consented that complainant should become a member of the company and the assignment of said policy to her was approved and entered on the books of the company, but from the further allegation that the policy was then delivered to complainant and became effective, it appears that the previous acts relied on as estoppel are the very acts which come within the express exclusion of the by-laws and policy. And inasmuch as complainant's case disclosed that under the terms of the policy she cannot be a member without giving a new note, this general allegation is not sufficient to show the creation of a membership by estoppel against the express provisions of the policy. All of the acts relied on as creating a membership by estoppel should be substantially set out in a bill praying for that special relief. The acts of the officers of complainant subsequent to the loss which are set out in the bill, are not of a character to entitle complainant to rely upon them as in themselves sufficient to create or recognize the relation of membership. There was in these transactions no act upon her part recognizing any liability as a member, and all of the acts and declarations of the officers appear to have been made in the course of examining the property to adjust the loss and in negotiations for the purpose of settling a dispute as to the amount of the loss. Such transactions, while

they were, for the purpose of settlement, recognitions of membership on the part of the committees and officers authorized to adjust losses and to a certain extent admissions of membership, do not appear to have been the basis of any subsequent action of complainant which would estop the company from subsequently asserting the truth in reference to complainant's alleged membership. The demurrer to the amended bill is therefore sustained upon this second ground of objection.