WILLIAM F. BIRCH, TRADING, ETC., RESPONDENT, v. MANUFACTURERS LIABILITY INSURANCE COMPANY OF NEW JERSEY, APPELLANT.

Argued December 6, 1915—Decided March 14, 1916.

The plaintiff entered into an oral contract with the defendant, through its agent, to insure the plaintiff against accidents happening to his employes, and to the public, arising out of his business as a contractor. The employes' policy was issued and received by the plaintiff, but the public policy was delayed in issuance and transmission. Before its delivery to the plaintiff, and while it was in the course of transmission, an accident happened to two of the public which subjected plaintiff to judgments therefor. *Held,* upon the authority of *Hallock* v. *Commercial Insurance Co.,* 26 *N. J. L.* 268, affirmed in this court in 27 *Id.* 645, that the acceptance of the proposal to insure for the premium offered was the completion of the negotiations, and that a completed contract was then and there perfected, upon which the defendant became liable.

On appeal from the Supreme Court.

656    COURT OF ERRORS AND APPEALS.

Birch v. Mfrs. Liability Ins. Co. of N. J.    88 N. J. L.

For the plaintiff, *King & Vogt.*

For the defendant, *Willard S. Cutler* and *Edward S. Holman.*

The opinion of the court was delivered by

MINTURN, J. Plaintiff subscribed for twenty-six shares of the stock of defendant company, and also signed a written application for workman's compensation and employers' liability insurance.

On August 10th, 1912, a binder good for ten days for both classes of insurance was issued. Thereafter, on August 16th, a workman's compensation and employers' liability policy was received by plaintiff, insuring him for one year, from August 12th, 1912. Not until after September 1st, 1912, was the public liability policy issued to him. On August 27th, 1912, while the plaintiff was engaged in iron construction work, upon a building at Passaic, an accident occurred wherein two men who were working for another contractor were injured. The plaintiff's liability to these men for their injuries was established by judgments obtained against him, at their instance. The plaintiff notified defendant of the accident, and defendant denied responsibility, and hence this suit.

At the time the plaintiff signed his application for insurance, the defendant company was dealing in two kinds of insurance. First, a workman's compensation and employers' liability policy, which insured an employer against loss, by reason of injuries happening to his employes. Second, a public liability policy, whereby the employer was indemnified against loss by reason of injuries happening to persons not in his service.

This second policy was intended to cover such injuries as happened to the two men at Passaic. The testimony concerning the agreement and its issuance was given by the plaintiff. He states that on June 19th, 1912, he had a conversation with defendant's agent, at Newark, when he subscribed for twenty-six shares of the defendant's capital stock and surplus, which

NOVEMBER TERM, 1915. 657

88 *N. J. L.*        Birch v. Mfrs. Liability Ins. Co. of N. J.

the agent informed him entitled him to procure both public liability and employers' liability policies of insurance. The rate of insurance was then and there fixed by agreement, and the plaintiff left with the understanding that he was covered against losses by the two species of insurance.

The binder for ten days, which the plaintiff thereafter received, referred to "policies" to be issued; and also referred to the two forms of insurance as "forms of insurance which are bound." As has been stated, but one of these policies was received by the plaintiff, and his explanation of retaining it without further inquiry is, that he did not read it, and that he supposed it covered public liability, as well as the other form of insurance. In the letter, which accompanied the binder, the defendant enclosed application blanks for "employers'" and "public" insurance, and the plaintiff was requested to fill in the same, and the promise was made in the letter that "we will be pleased to see that the policies will be in your possession for August 10th."

Replying to this communication, plaintiff returned the two applications filled in, with a letter to that effect. After the accident, it appears the defendant sent a "public liability" policy, dated August 10th, 1912, to its agent, at Newark, to deliver to plaintiff, but, subsequently, canceled it after learning of the accident, because, as the agent testified, "the accident was not one that should be covered under the policy that we had there, and was of a more serious nature than what they understood it was."

Upon that state of facts the case was presented to the jury by the trial court; the single inquiry being whether the agreement with the agent of the defendant for the public insurance was made as stated by the plaintiff. The verdict was in favor of the plaintiff. The recital of the substance of the testimony manifestly presents a basis for the verdict. It is attacked, however, on the fundamental ground that no legal basis is presented in the testimony for the construction of a contract which would bind the defendant. This contention is based upon the assumption that what the agreement be-

658    COURT OF ERRORS AND APPEALS.

Birch v. Mfrs. Liability Ins. Co. of N. J.    88 N. J. L.

tween the parties contemplated was a policy to be issued, rather than a policy which for all practical and legal purposes must be treated under the verdict as having been issued.

If there was such a definite subsisting contract, evidenced by the language of the verbal agreement, between the defendant and the plaintiff, and corroborated by the language of the binder, as well as by the issuing and cancellation of the written policy, executed in pursuance of the agreement, we have a situation in nowise different in essentials from that presented in *Hallock* v. *Commercial Insurance Co.*, 26 *N. J. L.* 268; affirmed in this court in 27 *Id.* 645.

The legal question here presented was, in that adjudication, before the Supreme Court, upon a special verdict taken at the Circuit, and it was there held, in the language of Mr. Justice Potts, "that the acceptance of the proposal to insure for the premium offered, was the completion of the negotiations, and after the policy had been executed and forwarded by mail to the agent for delivery, the contract could not be rescinded without the consent of the insured party," citing *Tayloe* v. *Merchants Fire Insurance Co.*, 9 *How.* 400, and *Mactier* v. *Frith*, 6 *Wend.* 115.

That statement of the law was supplemented by the opinion of Mr. Justice Elmer that "the contract was complete when the proposition made on the one side was finally accepted on the other."

The same question was before this court in *Smith & Wallace Co.* v. *Prussian Insurance Co.*, 68 *N. J. L.* 674, 676, and the same result was reached.

Authorities from other jurisdictions, to the same effect, might be added, but their citation can lend no additional force to the weight of a rule of law which has stood unchallenged in this jurisdiction for over half a century.

In the case *sub judice*, the jury found that the contract between the parties existed, and the case is one, therefore, for the application of the rule stated.

The judgment below will, therefore, be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, JJ. 13.

*For reversal*—None.