90 N.J. Super. 592 (1966)
218 A.2d 880
JEAN SHANNON, PLAINTIFF,
v.
THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 25, 1966.
*594 Mr. Edward G. D'Alessandro for plaintiff (Messrs. Friedman & D'Alessandro, attorneys).
Mr. William T. Sutphin for defendant (Messrs. Stryker, Tams & Dill, attorneys).
HAND, J.S.C.
Defendant Prudential Insurance Company of America (Prudential) applied to this court on February 4, 1966 for an order granting summary judgment in favor of defendant and against plaintiff Jean Shannon. The motion was based upon the pleadings, the affidavit of Leo DiFonzo, defendant's brief, the oral argument, and a letter containing supplemental information from defendant's attorney.
Plaintiff's attorney submitted plaintiff's affidavit, his brief, and presented oral argument.
Briefly stated, the following are the facts:
On March 12, 1963 Frank Shannon signed an application for a 25-year decreasing term life insurance policy from Prudential and paid $10 to its representative, Leo DiFonzo. Defendant prepared a policy, dated March 25, 1963, which came into the possession of DiFonzo on March 28, 1963. On March 29, 1963 Shannon was shot and killed while in the performance of his duties as a member of the police force of the City of Newark, N.J.
Shannon's widow, plaintiff Jean Shannon, as beneficiary under the policy, has demanded payment in the amount of *595 $10,000. Defendant has refused to pay on two grounds: (1) Frank Shannon had not paid the balance of $47.70 of the full first premium of $57.70; and (2) defendant had not delivered the policy to Frank Shannon before his decease.
No defense was interposed as to Shannon's physical or mental condition; he was in the active performance of his duties when killed.
The application and the conditional receipt were introduced into evidence at the hearing of the motion on February 4, 1966. The policy was not offered in evidence.
Plaintiff's affidavit states that her husband had entered into an agreement with the representative of Prudential, DiFonzo, on March 12, 1963, who stated "that upon the acceptance of the $10 my husband would be insured for his life for the sum of $10,000. My husband gave him a deposit of $10 and Mr. DiFonzo said my husband would have to submit to a physical examination and additionally, he would have to submit the application to his superiors, but that until the application was denied my husband would be insured." Thereafter, a gentleman from Prudential stated that the application had been approved, that Shannon had passed the physical examination, that Prudential had accepted the application, and that "Frank was now insured for $10,000." The gentleman also stated that the policy had been written and that he would drop it off the next day. Subsequently, DiFonzo indicated that the policy was in effect, that he had the policy and that he would deliver it to the home of the Shannons.
DiFonzo, in his affidavit, admitted that he was an insurance agent of Prudential, that on March 12, 1963 he received the application, and that "in exchange for a deposit in the amount of $10, at the same time I delivered to Frank Shannon a Conditional Receipt (ORD 22387-ED 1-63)." DiFonzo delivered the executed application forms to defendant's Bloomfield district office. From there the forms were sent to defendant's home office in Newark, N.J. DiFonzo also swore that *596 "on March 28, 1963, an insurance policy in the type and amount applied for by Frank J. Shannon, dated March 25, 1963, was received by me in the Bloomfield District Office. It was given to me for delivery to Frank J. Shannon upon payment of the full first premium thereon and upon ascertainment that the answers to the questions in the application aforesaid continued to be true as of the date of delivery of the policy."
DiFonzo's affidavit also stated that Shannon died on March 29, 1963, that the policy had not been delivered to Shannon prior to his death, and that on March 29, 1963 the full first premium of $57.70 had not been paid.
DiFonzo did not deny that he had stated in the presence of Jean Shannon on March 12, 1963 that "upon the acceptance of $10 my husband would be insured for his life for $10,000." Prudential has not submitted any affidavit by any "gentleman" from their company to deny "that Frank Shannon was then insured for $10,000."
Plaintiff argues that the payment of $10 accompanying the application effected a "binder," providing coverage for the interim period during which the policy was being considered by defendant. However, her argument runs, the anniversary date on which the subsequent annual premiums would be due is March 25, and accepting an annual premium without incurring a corresponding risk is patently inequitable.
The standards to be applied to questions of summary judgment were clearly enunciated in an opinion by the then Judge Brennan in the case of Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954), where he said that summary judgment procedure pierces allegations of pleading to show that facts are otherwise than alleged, and that summary judgment is not to be denied merely because allegations of pleadings raise an issue of material fact if other papers supporting motion show palpably the absence of any such issue.
The focus of attention here is whether, on the pleadings and the affidavits, there remain any genuine issues of material fact.
*597 Defendant urges that the recent opinion in Allen v. Metropolitan Life Ins. Co., 44 N.J. 294 (1965), is dispositive. In that case Justice Jacobs held that where the applicant paid the full first premium at the time of submitting his application and received in return a conditional receipt reciting that he would be insured when such premium was paid and the application was approved by the company, and it was the reasonable expectation of the applicant that he would be insured from that date forward unless he received notification to the contrary from the company, the policy would take effect at the time of the acceptance of the application by the agent of the company, regardless of insurability. He emphasized the expectations of the applicant in paying the full first premium:
"Indeed, the very acceptance of the premium in advance tends naturally towards the understanding of immediate coverage though it be temporary and terminable; any collateral advantage other than interim coverage is insubstantial and is not what the lay applicant is generally seeking by his advance payment." (at p. 302)
Conversely, defendant argues, the failure to make such a premium payment undermines the rationale of this opinion and dictates a finding that decedent was not insured prior to his acceptance of the completed policy. In support of this contention he cites, as persuasive, cases from other jurisdictions, in the absence of opinions directly on point in this State.
In Trotter v. Prudential Insurance Co. of America, 374 Mich. 682, 133 N.W.2d 182 (1965), the Supreme Court of Michigan held that where the applicant failed to pay the full first premium prior to her decease as provided by the policy, no contract of insurance was consummated.
To the same effect are the cases of Salter v. Security Benefit Life Insurance Co., 235 F. Supp. 901 (E.D. Mich. 1964), and New England Mutual Insurance Co. v. Lauffer, 215 F. Supp. 91, 97 (S.D. Calif. 1963).
*598 The conditional receipt in the present action provides that:
"(A) If interim term insurance was requested and if the above payment was made at the time of signing Part 1 of the application and is at least equal to the full premium for such interim term insurance, the interim term insurance shall take effect as of the later of the dates of the required and completed Parts 1 and 2 of the application; and the insurance under the policy, in accordance with and subject to the terms and conditions of the policy, shall take effect as of the policy date stated in the policy;
(B) If interim term insurance was not requested and if the above payment was made at the time of signing Part 1 of the application and is at least equal to the full first premium for the policy applied for according to the interval of premium payment selected by the applicant, the insurance under the policy, in accordance with and subject to the terms and conditions of the policy, shall take effect as of the later of the dates of the required and completed Parts 1 and 2 of the application (or an earlier date if requested in the application and permitted by the rules of the Company) except that if on request the policy is to bear a date later than either of said Parts 1 and 2, no insurance shall take effect until such later date and then only if the proposed insured is living and all of the answers to the questions in Part 1 and Part 2 of the application continue to be true and complete answers as of such later date."
This receipt differs from that in Allen in that it does not have the requirement that the insurance company approve the policy as a prerequisite to coverage. The thrust of the Allen opinion was aimed at circumventing insurability as a condition precedent (at p. 307), an element not present here. Allen, therefore, adds nothing to the interpretation of Clause (B) of the Conditional Receipt at bar.
While adhesion contracts such as this have been consistently construed strictly against the insurer and the benefit of the most favorable inference given to the insured, Allen, supra, 44 N.J., at p. 305, the court is of the opinion that the requirement of paying the full first premium is clearly presented both on the conditional receipt and in the body of the application itself, and the enforcement of this contract provision in the absence of an insurability limitation is not against public policy. Where the terms of an insurance are simple and clear, it is the function of the court to enforce it as written. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 44 (1960). *599 Since the affidavit of defendant stands unrefuted in its contention that the full first premium was not paid prior to the death of decedent, plaintiff cannot recover under this clause.
There remains, however, clause (A), which provides that plaintiff would receive interim coverage if, at the time of completing the application, he "request[ed] interim term insurance" and paid an amount at the time of signing "at least equal to the full premium for such interim term insurance."
This clause is not as unambiguous in its application, as is clause (B). Plaintiff argues that the payment of $10 and acceptance of the conditional receipt constitutes a "binder" or interim term contract.
The term "binder" is well known in the parlance of insurance contracts, and is generally taken to mean a contract, either oral or written, providing for interim insurance effective at the date of the application and terminating at either the completion or rejection of the principal policy. 12 Appleman, Insurance Law & Practice, 306 (1943). The use of binders in automobile and fire insurance is widespread, and has been held to afford full interim protection with little difficulty. Allen v. Metropolitan Life Ins. Co., supra, 44 N.J., at p. 301. Life insurance, on the other hand, involves more individualized risks, and insurance companies have been reluctant to extend coverage prior to making investigations (without receipt of the full first premium). In order to avoid the possibility of losing the applicant during the pendency, agents often require a payment, characterized by the insurer as a "deposit," and equal to a fraction of the full premium.
In the present case the application in question provided for a place where such an "amount paid in advance" could be noted, and a conditional receipt was issued in return for this "payment on account." Thus, the court must now determine whether it is to be bound by the insurer's characterization.
Our Supreme Court, in deciding Allen v. Metropolitan Ins. Co., supra, espoused the principle that agreements arising from conditional receipts should be interpreted in light of the reasonable expectations of the applicant. It refused to ensnare *600 the unsophisticated layman on the horns of ambiguous terminology. While Allen dealt with "insurability" as an added condition of recovery, the principle is applicable in problems stemming from the payment of sums which are fractions of premiums.
Prior to this case, the court in Life Ins. Co. of North America v. De Chiaro, 68 N.J. Super. 93, 108 (Ch. Div. 1961), held that the payment of $19.50 representing 1/12 of the annual premium without more afforded interim coverage. In reaching this conclusion, Judge Mintz stated that:
"Unless the receipt holder is to be protected against death during the interim period, there is no substantial advantage to him in paying the premium in advance. The advantage is to the insurance company which may accept or reject a risk dependent upon intervening developments. Should it elect to accept the risk, it is thus enabled to collect premiums for the period during which there was in fact no insurance and no risk."
Defendant contends that the applicant is in no way bound to accept the policy even after it has been accepted by the insurer and returned to the applicant. While this might be true at law, it denies the obvious effect which the payment of $10 has on the applicant, namely, that he is hesitant in pursuing or purchasing an alternative policy in the interim. Thus, in practice, the insurer reaps the advantages without incurring the risks.
Moreover, it is reasonable for the applicant to anticipate that he will receive something in return for his being bound to the insurer, namely, that the conditional receipt affords him immediate coverage.
This court, then, is of the opinion that it must interpret the terms of the conditional receipt in the manner most consistent with the reasonable expectations of the applicant and resolve all ambiguities in his favor. Thus, we are not bound to characterize the $10 payment as a "deposit," an "amount paid in advance," or a "payment on account," but can look to the circumstances surrounding the transaction. *601 This interpretation is not unfair to the insurer for, in the words of the court in De Chiaro,
"* * * this was the calculated risk the insurer took in accepting the premium payment in an endeavor to hold the insurance applicant and remove him from competing influences." (at p. 108)
At this posture of the case we are not constrained to make the determination of whether, as a matter of law, a binder contract existed between the applicant and the insurer, but rather on this motion for summary judgment we must decide whether, in piercing the pleadings and the affidavits, there exists a genuine issue of material fact bearing on the legal characterization of the conditional receipt.
Reiterating, plaintiff, widow of the applicant, swears that DiFonzo told her husband that "upon acceptance of the $10 my husband [he] would be insured for his life for the sum of $10,000." This point is not touched upon in DiFonzo's affidavit; he merely states that "In exchange for a deposit in the amount of $10, at the same time I delivered to Frank Shannon a Conditional Receipt * * *."
In conclusion, there remain for jury determination the questions of (1) whether decedent and agent for the insurer reached any agreement concerning immediate coverage, and (2) whether the $10 is "at least equal to the full premium for such interim term insurance," as prescribed by the conditional receipt.
Motion for summary judgment is denied. An order drafted in accordance with the provisions of this opinion and consented to as to form should be submitted for signature.