Debra L. KRAMER, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, a corporation of the State of New York, and Lawrence Duffey, Defendants.

Civ. A. No. 78–2572.

United States District Court,
D. New Jersey.

Aug. 15, 1980.

an insurance policy issued by the defendant Metropolitan Life Insurance Company (Metropolitan) through its agent, defendant Lawrence Duffey, upon the lives of herself and her husband, Robert D. Kramer. Metropolitan has refused to pay the benefits on the grounds that the policy was never delivered nor was the first premium paid in accordance with the terms of the policy.

Trial was held without a jury and this Court, having considered the testimony of all witnesses, the exhibits in evidence and the arguments of counsel, finds that the policy in question was in effect at the time of Robert Kramer's death and, therefore, plaintiff may recover under its double indemnity provision. This opinion is filed in lieu of findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 52(a).

On March 28 or 29, 1978[1], defendant agent Duffey met with the Kramers at their home in Lindenwold, New Jersey for the purpose of discussing life insurance. At that time, the Kramers signed an application to Metropolitan for a family life insurance policy in the amount of $10,000.00. (Ex. P–2). The parties decided that their policy would be paid for through Metropolitan's Check-O-Matic system, which provides for the payment of premiums by deductions from the insureds' checking account. To this end, the Kramers signed an "Authorization to Honor Checks", which permitted Heritage Bank to honor checks drawn on their account by, and payable to the order of, Metropolitan. (Ex. P–6). The portion of that document which is pertinent to this litigation states that "[w]hen the policy is delivered, the Initial Check-O-Matic premium must be paid in cash. The Company will draw checks or issue directions, as authorized above, for all other premiums."

It is undisputed that no initial premium was paid by the Kramers at the late March meeting. However, the witnesses at trial disagree regarding why this was so. Ac-

DuBois, Maiale & DuBois by Josiah E. DuBois, Jr., Camden, N. J., for plaintiff.

Kraft & Hughes by John Hall, Newark, N. J., for defendants.

## OPINION

COHEN, Senior District Judge.

In this contract action, plaintiff seeks recovery of accidental death benefits under

1. The two documents which were signed by the plaintiff and the deceased on that day were dated differently. One shows the date March 28, 1978, and the other shows March 29, 1978. Also, the papers submitted by the attorneys are in conflict. However, the exact date of this meeting is unimportant.

cording to the plaintiff, her husband offered to pay to Duffey any amount that Metropolitan required as a first premium. However, Duffey would not accept the payment because he did not know whether Robert Kramer would be insured and how much the premium would be if he were insured due to an eye condition he suffered. Duffey, however, testified that he requested cash payment of the first premium, but that Robert Kramer refused because he preferred to wait until he was sure that the policy was issued as applied for. Duffey asserts that he then explained that coverage would not commence until the payment of the first premium was made.

Consistent with plaintiff's testimony is a memorandum by Duffey, dated March 29, 1978, which states: "The reason I did not collect the first premium is because I was not sure if (Robert Kramer's) physical condition would put the company at an unfair risk." (Ex. P–20). At trial, Duffey was asked by the Court to explain the inconsistency between his direct testimony and the memorandum. He replied that

[Metropolitan] frowned on business being submitted that does not have accompanying money. After I got back into my office, reviewed the application, I was looking for something to tell the company that would get me off the hook for not having got the money I asked for from the Kramers. After seeing there was something mentioned about his eyes, I jumped on that opportunity to tell the company that's why I didn't get the money.

(By Mr. DuBois (plaintiff's counsel)):

Q. This is not the truth, then; is that correct?

A. That's correct.

Q. This report to your company was a lie; is that correct?

A. That's correct.

(Tr. 25–26. Duffey testimony).

This Court is not convinced by Duffey's explanation. Upon weighing his contradictory statements against the testimony of the plaintiff, we find that Robert Kramer offered to pay the first premium, but that Duffey refused to accept it.

Metropolitan eventually issued a family life insurance policy for the Kramers, and it inserted that policy into its Check-O-Matic system on June 1, 1978. The policy bore the issue date of June 5, 1978. On June 3, 1978 Metropolitan mailed to Heritage Bank the Authorization to Honor Checks which was signed by the Kramers. (Ex. P–7).

Duffey received the policy from Metropolitan on June 6 or 7, 1978. There was no accompanying correspondence. On June 8 or 9, 1978 Duffey called the Kramer home to inform them that the policy had been issued. Since Robert Kramer was working late, Duffey could not deliver the policy that evening. The testimony indicates, and this Court finds, that Duffey agreed to call the Kramers the following evening, when Robert Kramer would be home, so that he could arrange to promptly deliver the policy. However, the plaintiff testified at trial that she and her husband remained at home the entire next evening, but Duffey did not call. Duffey, on the other hand, alleged that he did call, but that there was no answer. Upon careful scrutiny of the conflicting testimony, we find that Duffey did not call the Kramers the night following his telephone conversation with the plaintiff.

On June 13, 1978 Duffey finally called the Kramer home to set up an appointment to deliver the policy. However, Robert Kramer died a few hours earlier. Duffey subsequently went to the Kramer home, but refused to deliver the policy to the plaintiff's father because he claimed that it was not in effect.

The outcome of this case turns on the resolution of two issues: (1) whether Metropolitan waived the requirement that the first premium be paid in cash as a condition precedent to the policy becoming effective; and, (2) whether the policy was delivered to the insureds.

Regarding the first issue, we have observed above that the Authorization to Honor Checks specifically noted that the initial premium payment had to be made in cash rather than via the Check-O-Matic sys-

tem. (Ex. P–6). We have made the factual determination that the Kramers did not pay the initial premium. But the plaintiff contends that the actions of Metropolitan and its agent constituted a waiver of this condition precedent.

■ With respect to the payment of premiums:

> The general rule is that in the absence of an express provision in the policy to the contrary, the actual prepayment of the premium is neither essential for a contract of insurance to be valid nor a condition precedent to the inception of the policy and the assumption of the risk by the insurer.

*Englishtown Auction Sales, Inc. v. Mount Vernon Fire Insurance Company*, 112 N.J. Super. 332, 339, 271 A.2d 292, 296 (App.Div. 1970); *see Carideo v. Phoenix Assurance Company of New York*, 317 F.Supp. 607, 611 (E.D.Pa.1970) *modified* 450 F.2d 779 (3d Cir. 1971). However, the requirement of paying the full first premium is not contrary to public policy, and it may therefore serve as a condition precedent to the liability of an insurance company. *See Shannon v. Prudential Insurance Company of America*, 90 N.J.Super. 592, 598, 218 A.2d 880, 884 (Law Div.1966). While such a condition is valid, it is well settled that

> Although the insurer may insert conditions in the application, requiring full payment of the first premium and delivery before the policy takes effect, *such conditions are for its own benefit and may be waived.*

*New York Life Insurance Company v. Ollich*, 42 F.2d 399, 401 (6th Cir. 1930) (emphasis supplied); *see Knickerbocker Life Insurance Company v. Norton*, 6 Otto 234, 241, 96 U.S. 234, 241, 24 L.Ed. 689, 691 (1878); *Echols v. Mutual Life Insurance Company of New York*, 106 Neb. 409, 413, 184 N.W. 58, 59 (1921); *Merchants Indemnity Corporation of New York v. Eggleston*, 68 N.J. Super. 235, 253–54, 172 A.2d 206, 215–16 (App.Div.1961); *Kromenski v. Meyer*, 47 N.J.Super. 434, 441, 136 A.2d 36, 39 (App. Div.1957). It is especially true that courts will look diligently for a waiver where, as

here, a forfeiture of the benefits of an insurance policy will otherwise result. "A basic tenet of insurance law proclaims that forfeitures are not favored." *Ramirez v. Metropolitan Life Insurance Company*, 580 P.2d 1136, 1139 (Wyo.1978). The preference for waiver over a forfeiture is aptly described in 16A Appleman, Insurance Law and Practice § 9082, at 289–91 (1968):

> Courts are always prompt to seize upon any circumstances that indicate an election to waive the forfeiture of a contract of insurance, or any agreement to do so, on which the party has relied and acted. Forfeitures are not favored if there are any circumstances indicating a waiver thereof. Such forfeitures will be enforced only where there is the clearest evidence that such was the intention of the parties, and slight circumstances are sufficient to indicate the intention of the insurer to effect a waiver.

> It has always been a principle of the law of insurance that forfeitures are not looked upon with favor, and the doctrine of "waiver" was evolved in order to obviate forfeitures which seemed unfair to the court. In passing on the question of the waiver of conditions in an insurance policy inserted for the insurer's benefit, a court will deal generously with the insured. The same rule of liberal construction in favor of the insured applies as governs in the construction of the contract itself. However, while courts will liberally construe in favor of an insured acts or circumstances by the insurer indicating an intention to waive a forfeiture, the courts should enforce forfeitures plainly incurred, which have not been expressly or impliedly waived by the insurer or its agent acting within the scope of his authority.

(footnotes omitted).

We note that an insurance contract cannot be *created* by a waiver. *See Kaminer v. Franklin Life Insurance Company*, 472 F.2d 1073, 1077 (5th Cir. 1973). "The subsequent acts of the company must show that it recognized the existence of a contract of insurance created earlier by following a

course of conduct inconsistent with the claim that no contract ever existed." *Wolters v. Prudential Insurance Company of America*, 296 F.2d 140, 143 (8th Cir. 1961) (quoting the unreported district court decision).

In the case at bar, the plaintiff urges that Metropolitan impliedly waived the required cash payment of the first premium as a result of its agent's refusal to take it when offered, and the subsequent withdrawal of four premium payments from the Kramers' checking account by the Check-O-Matic device.

It is undisputed that after the Kramers' family life insurance policy was put into Metropolitan's Check-O-Matic system and the Authorization to Honor Checks was sent to Heritage Bank, and after Robert Kramer's death, the following checks were issued and charged to the Kramer account:

    a. Check dated July 1, 1978 in the amount of $23.80 indicating due date to be June 5, 1978;

    b. Check dated July 5, 1978 in the amount of $23.80 indicating due date to be July 5, 1978;

    c. Check dated August 5, 1978 in the amount of $23.80 indicating due date to be August 5, 1978;

    d. Check dated September 5, 1978 in the amount of $23.80 indicating due date to be September 5, 1978.

But Metropolitan cites the deposition testimony of Hugh H. McCrory, its Assistant Manager, Special Accounts Division, for the assertion that it erred when it placed the Kramer policy into the Check-O-Matic system prior to the receipt of the first premium. Metropolitan contends that such an error is neither conduct which is inconsistent with its claim that the Kramers were not insured, nor a waiver of the cash payment of the first premium. However, the deposition testimony of Susan Saunders, Unit Supervisor in Metropolitan's Administrative Division of the Atlantic Head Office, the person whom Metropolitan brought forth as capable to answer questions regarding the Check-O-Matic procedure, reveals that the Kramer policy was fed into the Check-O-Matic system and the Authorization to Honor Checks was sent to the bank in accordance with normal procedure. These actions were not the result of error. Saunders' testimony further reveals that policies are routinely put into the Check-O-Matic system even though there is no information with respect to whether or not the initial premium has been paid. (Saunders deposition, at 17–20).

We are not convinced by Metropolitan's argument that a clerical error caused the placement of the Kramer policy into the Check-O-Matic system. This is not to say that Metropolitan purposefully took the next step, *i. e.*, withdrawing premium payments from the Kramer account after Robert Kramer's death. Although we do not believe that Metropolitan intended to deny coverage and then surreptitiously continue to withdraw premiums indefinitely, it is clear that in its normal course of business it placed itself in a position whereby the payment of the *first premium* could be collected by the Check-O-Matic system. Metropolitan was aware that Duffey did not receive an initial premium from the Kramers, yet it allowed the Kramer policy to be inserted into the Check-O-Matic device. Furthermore, hindsight shows that the Check-O-Matic system actually did withdraw the initial premium by way of the check it processed on July 1, 1978 which indicated a due date of June 5, 1978—the date when the policy issued.

■ While the issuance of the premium checks by Metropolitan may have been a mere error, the fact that its agent, Duffey, did not accept the initial premium which was offered to him, coupled with the ability of the Check-O-Matic system to withdraw that initial premium, evinces a waiver of the cash payment of the first premium. Metropolitan's allegation that it never meant to collect any premiums from the plaintiff is irrelevant. The importance of those withdrawals lies in their manifestation of the Check-O-Matic system's ability to effectuate the payment of the initial premium. Such programming of Metropolitan's own mechanism is contrary to its insis-

tence that the cash payment of the first premium remained a condition precedent. And, if it is a flaw in the Check-O-Matic system which allows the first premium to be paid in a manner adverse to the conditions of an insurance policy, it is Metropolitan's system to correct. We find that Metropolitan waived the condition that payment of the initial premium must be made in cash.

We now turn to the issue of whether the policy was delivered to the Kramers. The application for insurance provides that Metropolitan

> will incur no liability by reason of this application *until a policy has been delivered* and the full first premium specified therein has actually been paid to and accepted by (Metropolitan). Upon such delivery and payment, the policy will be effective as of its date of issue—*but only if, at the time of such delivery, the Proposed Insured and each other person to be insured is in the same condition of health as that represented in the application* and has not consulted with or been attended or examined by a physician or other practitioner since the completion of the application.

(Ex. P–2) (Emphasis supplied). Although Metropolitan sent the policy to its agent Duffey, it is uncontroverted that it was never. actually delivered to the Kramers. The question remains, however, whether the delivery to Duffey was a constructive delivery to the Kramers.

■ It is a long recognized rule of insurance law that delivery of a policy to an agent for the purpose of delivering it to a prospective insured is tantamount to actual delivery to that prospective insured. *See, e. g., Jackson v. New York Life Insurance Company*, 7 F.2d 31, 32 (9th Cir. 1925); *Birch v. Manufacturers' Liability Insurance Company of New Jersey*, 88 N.J.L. 655, 658, 96 A. 1003, 1005 (E. & A. 1916); *Gelczis v. Preferred Accident Insurance Company of New York*, 12 N.J.Misc. 232, 233, 171 A. 144, 144 (S.Ct.1934). However, it is equally well settled that this principle of constructive delivery "does not operate where a condition

was attached to the delivery to the agent which is binding upon the applicant or is such that it must be met by him." 1 Couch on Insurance 2d § 10.27 at 445 (1959) (footnote omitted); *see Rogers v. Great-West Life Assurance Company*, 138 F.2d 474, 475 (8th Cir. 1943); *Zimmerman v. United Benefit Life Insurance Company*, 199 So.2d 14, 16 (La.Ct.App.1967); *McClave v. Mutual Reserve Fund Life Association*, 55 N.J.L. 187, 189, 26 A. 78, 78 (S.Ct.1893).

■ In the case at bar, even though we have found that the condition of paying the first premium in cash was waived by Metropolitan, the delivery of the policy to Duffey was not automatically delivered to the Kramers because of another condition in the application, emphasized in the quotation above, which requires that the insureds be in the same state of health at the time of delivery as they were in at the time of the application. Duffey had no authority to deliver the policy to the Kramers without first determining their state of health. Therefore, the mere delivery to Duffey was not constructive delivery to the Kramers.

■ However, constructive delivery may still be found if the failure to actually deliver the policy to the insured was caused by the negligence of the agent who had possession of the policy. We find persuasive authority for this position in the well reasoned opinion of the Washington Supreme Court in *Frye v. Prudential Insurance Company of America*, 157 Wash. 88, 288 P. 262 (1930), which states that

> "Authorities are to be found where the claim of constructive delivery has been sustained under the particular facts shown in special cases in which the local agent, through whom the application was made, having received a policy for conditional delivery, after ample time and opportunity in which to act, neglected or failed to make the delivery. . . ."

157 Wash. at 93, 288 P. at 264 (quoting *Bowen v. Prudential Insurance Company of America*, 178 Mich. 63, 73, 144 N.W. 543, 546 (1913)).

We have heretofore made the factual determinations that Duffey received the policy from Metropolitan on June 6 or 7, 1978; he spoke with the plaintiff on June 8 or 9, 1978; and he promised to call the Kramers the following evening, but he failed to do so. Duffey's own testimony established that he lived just three minutes traveling time from the Kramers, yet during the six or seven days between the time he received the policy from Metropolitan and the death of Robert Kramer he attempted to deliver the policy only once, and he failed to call the Kramers when he promised he would.

■ This Court finds that Metropolitan's agent, Duffey, had ample time and opportunity to deliver the family life insurance policy to the Kramers, but he did not do so. We therefore find that the policy was constructively delivered to the Kramers, and since the cash payment of the first premium was waived, that its provisions must be enforced. Plaintiff shall recover compensatory damages in the amount of $20,000.00 [2], together with interest from June 13, 1978 to the date of payment. The insurance under the policy shall continue for the balance of its term on the life of the plaintiff without further premium payments, pursuant to page five of the policy. (Ex. P–1). The defendants are responsible to the plaintiff for the reasonable costs of this action.

■ We deny plaintiff's request for the assessment of punitive damages against the defendants. Their challenge of the payment of benefits in this case did not represent such egregious conduct as to warrant their punishment. *See, Leimgruber v. Claridge Associates, Ltd.,* 73 N.J. 450, 454, 375 A.2d 652, 654–55 (1977). And, while Metropolitan's taking of four premium payments subsequent to Robert Kramer's death was clearly negligent, we do not feel that it was willful, wanton or malicious.

---

**2.** The policy's basic amount was for $10,000.00, but it provides for an additional $10,000.00 for death caused by accidental bodily injury, such as in this case.