JOHN L. SEAY *v.* GEORGIA LIFE INSURANCE COMPANY.

(*Knoxville.*  September Term, 1915.)

1. **INSURANCE.  Liability insurance.  Construction.  "While acting under assured's instructions."**

Defendant insured plaintiff, a physician having in his employ two younger doctors as assistants, against loss from liability for bodily injuries or death suffered in consequence of error, mistake, *or malpractice by any* assistant in his employ "while acting under the assured's instructions."  One of his assistants made a mistaken diagnosis, resulting in a judgment for damages against the physician.  The diagnosis and treatment was left wholly to the assistant, and the physician apparently had no knowledge of the particular case and gave the patient no personal attention; the assistant merely acting according to previous general instructions and the custom which prevailed under the contract between himself and the physician.  *Held,* that defendant was not liable, since the quoted words were intended to qualify defendant's liability, and if they were treated as covering the physician's general instructions, they would neither expand nor restrict the insurer's liability, but would be altogether meaningless.  (*Post, p.* 675.)

2. **INSURANCE.  Construction of policy.**

Though an insurance contract prepared by the company, when doubtful or ambiguous in its terms, will always be construed in favor of the insured, it should be construed, like other contracts, so as to give effect to the intention and express language of the parties.  (*Post, pp.* 675-678.)

Cases cited and approved:  Travelers' Ins. Co. v. Myers, 62 Ohio St., 529; Ward v. Maryland Casualty Co., 71 N. H., 262; Crouch v. Surety Co., 131 Tenn., 265.

132Tenn.43

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.—W. B. GARVIN, Chancellor.

ALLISON, LYNCH & PHILLIPS, for appellant.

THOMPSON, WILLIAMS & THOMPSON, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

The complainant, Seay, is a physician, and was under contract to render necessary medical attention to several hundred employees of a mine of the Tennessee Coal, Iron & Railroad Company. He had in his employ two younger doctors as assistants.

A miner was hurt in an accident, and Dr. Seay's office was notified. One of the assistants responded to the call, undertook to diagnose the injuries, and proceeded to treat them. In so doing the assistant acted under general directions, within the scope of his employment, but Dr. Seay appears to have had no knowledge of this particular case, or at any rate he gave the patient no personal attention, not seeing him at this time. The diagnosis and treatment was left wholly to the assistant.

There seems to have been a mistaken diagnosis, and the treatment was consequently unsuccessful. Malpractice was alleged by the miner, who claimed to have

suffered a permanent deformity by reason thereof, and suit was brought against Dr. Seay to hold him for damages arising from the conduct of his assistant and employee. There was a judgment against Seay for $1,000.

The case before us is a suit by Seay on a physician's liability policy issued to him by defendant company; the suit being to recover the amount of the miner's judgment, which Seay has paid, and the costs and expenses of that litigation.

The defendant company answered, denying liability for several reasons, and from a decree in favor of the company, complainant has appealed.

The policy in question undertook to indemnify complainant, the assured—

"against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death suffered by any person or persons in consequence of an alleged error or mistake or malpractice by any assistant in the employ of assured while acting under the assured's instructions and occurring while this policy is in force."

The question determining liability is whether the assistant was "acting under the assured's instructions," within the meaning of the policy.

It is conceded that Seay did not personally direct the assistant with reference to the treatment of the injured man, but complainant contends that the assistant acted "in the line of his employment and according to previous general instructions and the custom which prevailed under the contract between himself and Seay."

Complainant invokes the familiar rule that an insurance contract prepared by the company, when doubtful or ambiguous in its terms, will always be construed in favor of the assured, and maintains that the policy should be construed to cover acts performed under general directions or instructions of the assured, or, in other words, as protecting the assured against his assistant acting in the scope of the latter's employment.

We recognize the rule of construction relied on, but we must also bear in mind that "policies of insurance should be construed, like other contracts, so as to give effect to the intention and express language of the parties." 15 Cyc., 1037; *Travelers' Insurance Company* v. *Myers,* 62 Ohio St., 529, 57 N. E., 458, 49. L. R. A., 760; *Ward* v. *Maryland Casualty Co.,* 71 N. H., 262, 51 Atl., 900, 93 Am. St. Rep., 514.

These words "while acting under the assured's instructions," were certainly introduced to qualify the company's liability in some way, but, should we hold an assistant acting under general instructions or within the scope of his employment to be acting under the "assured's instructions," then the qualification attempted entirely fails. If we eliminate the words "while acting under the assured's instructions," we have left an undertaking to indemnify against malpractice, etc., "by any assistant in the employ of assured . . . occurring while this policy is in force." Thus deleted, the contract would mean exactly what complainant argues it now means. It would

cover the malpractice of any assistant acting "in the employ," that is, under general directions of assured.

Interpreted as complainant insists the phrase under consideration would neither expand nor restrict the insurer's liability. It would add nothing to the contract, nor would it take anything out of the contract. It would be altogether meaningless.

We may not thus deny effect to the expressed language of the parties.

Moreover, as we have formerly had occasion to observe, all insurance is somewhat personal in its nature, resting to a great extent on the reputation and character of the assured. *Crouch* v. *Surety Company,* 131 Tenn., 265, 174 S. W., 1116.

In a physician's liability contract such as the one before us the learning, experience and ability of the individual insured necessarily and largely enter into the consideration. The risk assumed is the assistant "while acting under the assured's instructions." As a safeguard against the error, mistake, or malpractice of the assistant, the insurer stipulates for the instructions of the assured. The insurer, relying on the professional skill of the assured, contracts for his supervision, or at least for his instructions.

It cannot be held that the insurer by this sort of contract undertakes to answer for the mistakes or malpractice of a doctor's helper acting on his own responsibility without any advice or directions from the assured; such subordinate being unknown to the insurer, and the policy without provision as to his qualifica-

tions.    This would be an extraordinary hazard, and not one within the purview of this policy.

In the case at bar the assistant diagnosed and treated the patient without suggestion or aid from complainant.    From a professional standpoint the assistant was acting independently.    The insurer had no benefit of the supervising skill or instructions of complainant for which it had contracted.    Such supervision or instructions might have averted the mistaken diagnosis and the consequent malpractice.

Without passing on other defenses, we are satisfied the assistant was not ''acting under the insured's instructions,'' within the meaning of this policy, and the chancellor's decree will be affirmed, and the bill dismissed.

BUCHANAN and FANCHER, JJ., dissent.