ULA W. ECHOLS, APPELLEE, V. MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK, APPELLANT.

FILED JULY 7, 1921. No. 21279.

1. Insurance: POLICY: WAIVER OF CONDITIONS. Provisions in a con-
tract of life insurance to the effect that the policy does not be-
come a binding contract of insurance unless and until the first
premium is paid, and that no agent of the company, or other per-
son, has power on behalf of the company to modify the contract
of insurance or to extend the time of paying any premium, are for
the benefit of the company and may be waived by it.

2. ———: ———: ———. In such case, where a rule of the com-
pany permits the agent to take a note of the insured payable to
himself for the first premium, the agent being held responsible
to the company for the net premium, the agent becomes the
debtor, and when he delivers the policy to the insured under an
agreement to extend the time of paying the premium and to take
the note of the insured for such premium, but no note is given for
the reason that the agent had no blank forms with him at the
time, and it was agreed that the agent would see insured in a
few days and get the note, and the agent left the city two days
thereafter without procuring the note, and before his return the
insured died, such transaction will be deemed a payment of the
premium as between the insured and the company.

3. ———: ———: ———. In such case, an agreement by the agent
to extend the time of paying the premium will be regarded as a
waiver by the company of the conditions of the contract of in-
surance respecting time of paying the premium, and the limita-
tions of the power of the agents to extend the time of such pay-
ment.

4. ———: NOTICE. Notice to a general agent of a life insurance com-
pany having authority to solicit insurance, to make out and for-
ward applications, to deliver to the assured policies when re-
turned, and to collect and transmit premiums, will operate as
notice to the company, and it will be bound by acts then done by
him in respect to the business he is transacting.

5  Evidence examined, and *held* to sustain the findings of the trial court.

APPEAL from the district court for Dodge county: FREDERICK W. BUTTON, JUDGE. *Affirmed.*

*Montgomery, Hall & Young,* for appellant.

*Courtright, Sidner, Lee & Jones, contra.*

Heard before MORRISSEY, C.J., DAY, DEAN and LETTON, JJ.

DAY, J.

The plaintiff recovered a judgment against the defendant upon a life insurance policy in which she was named as beneficiary. By stipulation of the parties, a jury was waived, and trial was had to the court. Defendant appeals.

It was pleaded as a defense that the first premium was never paid, and also that the policy was never delivered to and received by the insured during his continuance in good health; that these requirements were conditions precedent to the contract of insurance becoming binding and effective, and that therefore the policy never became a binding contract. The reply pleaded a waiver of the conditions of the contract requiring the first premium to be paid before the policy became effective, and alleged that credit was extended to the insured for the payment of the first premium, and that within the time of the extended credit full payment of the premium was tendered and refused. The reply also denied the allegations of the answer, and alleged that at the time the policy was delivered to and received by the insured he was in good health. A brief reference to the facts will serve to make clear the precise points in controversy.

The record shows that on October 30, 1918, Philip K. Echols, the insured, who lived at Cheyenne, Wyoming, made application to the defendant company through its local soliciting agent, Theodore Thulemeyer, for a life insurance policy in the sum of $5,000, requesting therein

that his wife, Ula W. Echols, be named as beneficiary.   At
the time the application was made, it was agreed between
Thulemeyer and the insured that, if the company accepted
the risk and issued the policy, insured could have 60 or
90 days in which to pay the first premium of $125.25, and
that a note was to be given therefor.   The application was
made upon one of the printed forms provided by the com-
pany, and contained a recital that the insured understood
the stipulations contained therein, which, in so far as they
have any application to the present issues, are as follows:
"The proposed policy shall not take effect unless and un-
til the first premium shall have been paid during my con-
tinuance in good health, and unless also the policy shall
have been delivered to and received by me during my con-
tinuance in good health."   And, further, "I agree that
no agent or other person except the president, vice-presi-
dent, a second vice-president, a secretary, or the treasurer
of the company has power on behalf of the company to
make, modify or discharge any contract of insurance, to
extend the time for paying a premium, to waive any lapse
or forfeiture, or any of the company's rights or require-
ments."   The policy also contained a stipulation in sub-
stantially the same language as the clause last above
quoted.   The application and the medical examination
were forwarded to the home office of the company in the
city of New York, and in due course of business the appli-
cation was accepted and a policy issued thereon.   On
November 6, 1918, the policy was mailed by the home
office to its Denver, Colorado, agency for the purpose of
delivery.

It appears that the company maintains a general
agency at Denver, which has general charge of the busi-
ness of the company originating in the states of Colorado
and Wyoming.   This Denver agency was in charge of O.
C. Watson, who is styled "manager," and who had au-
thority to appoint soliciting agents, collect premiums,
deliver policies, and in fact conduct a branch office of the
company's business within the states mentioned.   The

Denver agency, however, did not pass upon applications for insurance or issue policies.

On November 13, 1918, the policy was received at the Denver agency, and by it, on the same day, mailed to Thulemeyer at Cheyenne for delivery and settlement. Owing to the absence of Thulemeyer from Cheyenne, he did not receive the policy until Saturday, November 16, at which time, at about 4 o'clock p. m., he met Echols by appointment at Thulemeyer's room, and delivered the policy. On that occasion it was agreed that an extension of time for the payment of the premium was to be given to January 2, 1919. As to what occurred at that time, Thulemeyer's testimony is as follows: "I handed him the policy, and he asked me something about the settlement, and I asked him when it would suit him best to pay for the policy, and he told me it would suit him best if he could pay for it immediately after the first of the year, and I agreed to that with the understanding that he was to give me a note, of course, which he would have done then, but I had no notes in my room, and I told him that I would fix it up with him in a few days. He asked me then if that would be all right, and I told him, sure, it would be."

On the day the policy was delivered to the insured, Thulemeyer wrote to the Denver agency that he had delivered the policy, and asked Watson whether he could handle his note. Whether he referred to his own note or Echols' note is not entirely clear. On November 18 Watson replied to Thulemeyer as follows: "With reference to policy No. 2534687, Echols, which you have delivered, please send note to me and I will advance the net premium right away."

Thulemeyer again left Cheyenne on Monday, November 18, and was absent when in the due course of mail Watson's letter should have been received. In the meantime, and before the letter was delivered to Thulemeyer, Echols died, on November 24, from a sudden attack of influenza, without having given the note for the premium. It ap-

pears that Thulemeyer and Echols were personal friends, and that Watson also was acquainted with Echols. After Echols' death, but within the time of the extended credit for the payment of the premium, payment of the premium was tendered and refused.

It also appears, although upon this point there is a little confusion in the testimony, that a rule of the company permitted its agents to accept a note in payment of the first premium. In such case, however, the note was to be taken in the name of the agent, was to be his property, and the agent was required to remit the net premium to the company. The purpose of such a rule was no doubt to enable the agents to extend credit to persons of known financial responsibility in cases where they were willing to advance to the company the net premium.

It is quite obvious that the stipulations in the application and policy, which have heretofore been quoted, and which form the basis of the defenses pleaded, are for the benefit of the company, and can be waived by it, and such waiver may be shown by conduct on the part of the company which indicates an intention to do so. It is manifest that the rule of the company permitting its agents to accept notes in their own names for the first premium, they becoming responsible to the company for the net premium, is entirely inconsistent with the provisions of the contract that the policy shall not take effect until the first premium shall have been paid, and also inconsistent with the provisions that no agent or other person except certain designated officers shall have power on behalf of the company to extend the time for paying the premiums. Under such circumstances, the court will construe the action of the company in its most favorable light to the insured, with the view of sustaining rather than defeating the contract. It is clear that the insured believed at the time the policy was delivered to him that he had a valid and effective contract of insurance, and it is equally clear that Thulemeyer intended that the policy should be effective, and that he was to advance the net premium to

the company. If a note had been given by the insured to Thulemeyer for the premium, and he had remitted the net premium to the company, it would seem that the transaction would have been within the express authority of the agent. Does the fact that no note was actually given by the insured, and the net premium was not actually sent to the company by the agent, change the situation? Under the circumstances shown here, we think not. As between Thulemeyer and the insured, the parties had agreed that a note was to be given, the amount was fixed, and the time of payment made definite. The policy was delivered with that understanding. The only reason a note was not given at the time was because the agent did not have a blank form with him. In this situation the agent said that he would see the insured in a few days and fix up the note. On the following Monday the agent was called out of the city, and before his return Echols' death occurred. The delivery to and acceptance by the insured of the policy would be a sufficient consideration to support the promise to pay the premium to Thulemeyer. The note would be merely evidence of Echols' obligation to pay and could only have been for the protection of Thulemeyer individually. This he could waive, and he did so by delivering the policy to Echols and extending the time of payment of the premium, with the assurance that it would be all right. When, therefore, Thulemeyer delivered the policy under the agreement to extend the time of payment, he himself became liable to the company for the net premium. He recognized that and wrote the letter to Watson to arrange for the payment. Watson wrote to send the note and he would advance the net premium. In doing this, Watson was acting within the general scope of his authority as manager, and his act must be regarded as binding on the company. Watson and Thulemeyer both considered the policy effective, and that the net premium was to be paid to the company by Thulemeyer. In permitting Thulemeyer to become responsible for the net premium, the company assumed no risk of

failure of payment, for it was shown that considerable sums as commissions were coming to Thulemeyer from time to time on policies previously secured by him. Under these facts we hold that the provisions of this insurance contract, that the policy does not become effective unless and until the first premium is paid, and that no agent of the company except certain designated officers has power to extend the time of paying any premium, are for the benefit of the company, and may be waived by it. And where by a rule of the company its agents are permitted to accept the note of the insured for the first premium, by taking the note in their own names, and themselves becoming responsible to the company for the net premiums, and where the agents of the company authorized to deliver policies and collect premiums deliver the policy to the insured under an agreement to extend the time of paying the premium, and to take the note of the insured for the same, but no note is given for the reason that the agent had no blank notes with him at the time, and it was further agreed that the agent would see insured in a few days and get the note, and the agent left the city two days thereafter without procuring the note, and before his return the insured died, such transactions will be considered a waiver of the provisions of the contract of insurance, and as between the insured and the company will be deemed a payment of the premium.

In addition, it will be observed that Watson was the general manager of the company's business in the states of Colorado and Wyoming, and that he had been notified by Thulemeyer that the policy had been delivered without the payment of the premium, and, inferentially at least, that an extension of time for paying the premium had been granted to the insured. This notice to Watson was in legal effect notice to the company as to what had been done. It is a general principle of agency that knowledge to the agent is knowledge to the principal, in so far as such knowledge pertains to matters within the scope of the agent's powers. Watson knew that the policy had

been delivered without restriction; that the premium had not been paid; that an extension of time of paying the premium had been given; and that Thulemeyer had become liable for the net premium; and yet he made no objection or protest. On the contrary, he acquiesced and approved of what had been done, and lent his aid to Thulemeyer to raise the amount of the net premium for remittance to the company. Watson's knowledge will be treated as the knowledge of the company, and his acts the acts of the company. After the company's agents had induced the insured to believe that he was protected by his policy, the company is estopped, after the death of the insured, to claim that the policy never became effective because the first premium had not been paid.

The principle here involved was considered in *German Ins. Co. v. Shader*, 68 Neb. 1, in an opinion by Commissioner Pound, and it was held: "Provisions in a policy of insurance that the risk shall not attach unless the premium has been actually paid are waived in case the policy is delivered upon an agreement to extend credit, and the insurer does not take advantage of such provisions, but treats the policy as in force." And, in discussing the proposition, the court said: "The general rule that an insurance company cannot take advantage of conditions in a policy whereby such policy is to be void by reason of circumstances existing at the time the policy issued, in case the facts were known to its agent at the time, has been recognized universally. More recently insurance companies have sought to avoid the consequence of this well-established rule by provisions to the effect that the conditions of the policy could be waived only by written indorsement, and by clauses in which agents are forbidden to waive any of the conditions of the policy in any other manner. Notwithstanding provisions of this type, an overwhelming majority of the state courts have continued to apply the rule that an insurance company cannot set up that a policy issued by its agent with knowledge of the facts was void when it was issued, by reason of facts

Novak v. LaFayette Life Ins. Co.

which he well knew. Including our own court, the courts of some twenty-seven states, at least, have, upon one ground or another, adhered to this doctrine in the face of these provisions as to waiver."

As bearing generally upon the questions discussed, see *Washburn v. United States Casualty Co.*, 108 Me. 429; *Berliner v. Travelers Ins. Co.*, 121 Cal. 451; *Griffith v. New York Life Ins. Co.*, 101 Cal. 627; *Home Ins. Co. v. Gilman, Exr.*, 112 Ind. 7; *Bush v. Insurance Co.*, 85 Mo. App. 155.

Appellant contends that the insured was not in good health at the time of the delivery of the policy to him on November 16, 1918. We have examined the record, and find there is some conflict as to the precise time the insured became ill, but there is ample evidence in the record to support the finding made by the trial judge that the insured was in good health at the time of the delivery of the policy, and his finding of fact upon conflicting evidence is entitled to the same weight as the finding of a jury would be given, and, under the familiar rule in force in this state, will not be disturbed unless clearly wrong.

In view of the liberal allowance made to plaintiff's attorneys in the trial court, an attorney's fee of only $100 is allowed in this court.

The judgment of the district court is

AFFIRMED.