SUSIE M. WHITEHALL, APPELLEE, V. COMMONWEALTH CASUALTY COMPANY ET AL., APPELLANTS.

FILED MAY 24, 1933. No. 28559.

*Swarr, May & Royce,* for appellants.

*Edward C. Fisher, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, DAY and PAINE, JJ., and MESSMORE, District Judge.

PAINE, J.

This is a suit brought on an oral contract of accident insurance. The jury returned a verdict and judgment was for $686.94, together with an attorney's fee of $200. Defendants appeal.

The plaintiff was visiting her sister in Fremont, and Leslie Emigh and H. S. Marks, agents for the defendant company, came there on September 16, 1930, to collect a premium from her sister, and while there they solicited the plaintiff to buy accident and health insurance of them, and promised her that, for $1.60 a month, she would be insured against disability caused by any kind of accident or sickness, and would be paid $7 a week during the time that she was disabled from either cause for not exceeding two years, and that her insurance would go into effect as soon as she paid her money. Relying upon these statements, the plaintiff accepted the offer made, and thereupon paid to the agents of the defendant company the sum of $1.60, for which amount she was given a binding receipt. Certain questions were asked her, and her answers were written down on an application blank, which was filled out by the agent, and she was told that she did not need to read the application, but simply sign it, which she did, not knowing what it contained. She believed the statements of the agent, relied upon his assurances that

she was immediately insured, and did not purchase other insurance, although she was intending to make a trip to Chicago at that time, and had planned to get accident insurance for that reason. 'The application, which was signed that day, was sent to the company, and a policy was duly issued and sent to H. S. Marks for unconditional delivery to the plaintiff, and he says that he immediately mailed it to her, about noon on September 22. There was a question in the evidence about the receipt of the policy. The plaintiff said the mail carrier brought it to her about 9:30 in the morning, just as she was leaving to go down town on September 22, 1930, and that she did not read it, but laid it aside, and in making a trip down town, she was injured about 12:30 p. m. of the same day.

The accident occurred when a young lad lost control of the car which he was driving at high speed, and crashed into the car in which plaintiff was riding, tipping it over so that plaintiff's arm and shoulder were dragged between the car and the curb; the lad not shutting off his engine. Plaintiff's arm was badly torn and fractured, her jaw fractured, her mouth and lips cut, and many other injuries to other parts of her body, including the fingers and thumb of one hand. She was confined in hospitals from the date of the accident until the 18th of the following February. In grafting skin from her lower limbs to cover her shoulder and arm, infection set in in the limbs. At the time of the trial in May, 1932, the physician testified the heavy scar from below the elbow to the shoulder caused a contracture of the muscles and all the soft tissues, so that she can extend her arm only partially. The scars on her limbs have drawn and contorted her limbs, and she is at least 75 per cent. disabled, and totally disabled so far as pursuing her occupation of seamstress is concerned.

The Commonwealth Casualty Company having been absorbed by the Independence Indemnity Company, the latter company filed answer, denying that any oral contract of insurance was ever entered into, and alleging that the

$1.60 was paid upon a written contract of insurance, which had not been delivered to her at the time of the accident. It is further alleged that the payment was returned to her, which plaintiff denies in her reply.

At the trial, plaintiff tendered ten instructions, all of which were adopted, and given as the court's own instructions. The defendant offered nine instructions, and this comment appears written upon the bottom of the last one: "These instructions not given to the court until immediately before the court began reading instructions to the jury. Therefore all refused. J. H. Broady, Judge."

In the motion for new trial, 22 errors are alleged, setting up that the verdict is contrary to the evidence and the law, and objecting to the first 12 out of the 16 instructions given by the court, and of the failure to give the nine offered by the defendant, and in failing to direct the jury to return a verdict for the defendant at the close of all the evidence.

We will first consider the error charged to be prejudicial in the refusal to consider the nine instructions, citing *Billings v. McCoy Brothers,* 5 Neb. 187, which held that instructions should be given if requested at any time before the jury retire.

At common law, and in the absence of statute, instructions may be either oral or in writing, at the discretion of the judge. Decisions in Florida, Georgia, Idaho, Oregon, and Washington show that oral instructions may be given if neither party requests the same to be in writing before the evidence closes. In several states they may be given orally to the jury, but transcribed by the official stenographer. 1 Blashfield, Instructions to Juries (2d ed.) 78, etc.

In Nebraska, section 20-1107, Comp. St. 1929, for civil trials, and section 29-2016, for criminal trials, treat this matter, in the fifth paragraph, in exactly the same language in each section, and require requests for instructions to be submitted at the close of the evidence. These sections both state that the instructions shall be reduced

to writing if either party requires it, and in former times parties sometimes consented to oral instructions. *Kuhn v. Nelson,* 61 Neb. 224; *Fitzgerald v. Fitzgerald,* 16 Neb. 413. But section 20-1114, Comp. St. 1929, now requires that all instructions be in writing, and filed by the clerk before being read to the jury.

In *Sioux City & P. R. Co. v. Finlayson,* 16 Neb. 578, 49 Am. Rep. 724, it was held that instructions submitted to the court should not be given to the jury if they had marginal citations of authorities upon them, as appear upon each of the nine offered by defendant in case at bar.

A trial court is not allowed to add oral explanations to its written instructions. *Hartwig v. Gordon,* 37 Neb. 657. But, if so given, and not objected to at the time, objections to such oral additions will be deemed waived. *Horbach v. Miller,* 4 Neb. 31; *Republican Valley R. Co. v. Arnold,* 13 Neb. 485.

It has been held that not every statement made by the court to the jury is a formal instruction, required to be in writing. *Grammer v. State,* 103 Neb. 325; *Millard v. Lyons,* 25 Wis. 516; *State v. Potter,* 15 Kan. 302; 1 Corcoran, Instructions to Juries (2d ed.) 2.

Instructions should be given in writing and carefully bound together, and filed by the clerk as the complete charge to the jury, in accordance with section 20-1114, Comp. St. 1929. It is unfair to the court and delays the trial, and deprives the jury of receiving the law immediately at the close of the argument, to have instructions handed up at that late time. While our law requires instructions to be submitted at the close of the evidence, so that they may be carefully considered by the court, yet a request for an instruction might be received and allowed at any time before the jury have retired, when it was made necessary by an omission of the trial judge of some material question presented in the case. *McKennan v. Omaha & C. B. Street R. Co.,* 95 Neb. 643; *Billings v. McCoy Brothers,* 5 Neb. 187; 5 R. C. L. Permanent Supp. p. 3676, note 61; 14 R. C. L. 802, sec. 61; 13 Standard Ency. of Procedure, 717.

We have held in *Osborne v. State,* 115 Neb. 65, that the proper time to make request for instructions is when the evidence is concluded, and in many districts the bar rules promulgated by the district courts so provide. The general rule is, however, that, unless the request is made at the proper time, it may be refused by the court, as was done in the case at bar.

In the criminal conspiracy case of *State v. Townley,* 149 Minn. 5, 17 A. L. R. 253, under a statute reading very similar to the Nebraska statute, it was held that it was within the discretion of the trial court to receive and consider instructions submitted near the end of the argument, notwithstanding the request of the court, made several days before, that the attorneys present their proposed instructions in time to enable the court to consider them. A careful examination of the instructions given by the court shows that the issues were fully and fairly presented, and gave the jury an understanding of the defense of the insurance company and of the law of the case.

The most difficult question is, whether an oral contract of insurance was perfected in the case at bar. The testimony of one of the agents present at the time has an important bearing on this point. Leslie Emigh testified that he was present at the time with H. S. Marks, under whom he was working; that Mr. Marks was the general agent and manager for the defendant company at Omaha, and he identified stationery printed for him by the company, showing that position. He also testified that Mr. Marks hired agents, which the company paid; that all applications were sent in through Mr. Marks, who adjusted claims for the company, and drew drafts in payment thereof, and that Mr. Marks, upon receipt of the $1.60, told plaintiff that he would give her a binding receipt, which he did, and promised her that the insurance would go into effect at once. Mr. Emigh admitted that there was an application, which plaintiff signed, in which she agreed that the insurance would not take effect until

the delivery of a policy to her in good health, and that he wrote "Yes" as her answer to that question, without her knowledge, and that she signed the application without reading it, at his suggestion.

In section 44-307, Comp. St. 1929, the term "agent," when relating to insurance matters, covers any person who shall, with authority, receive or receipt for any money on account of any contract of insurance. And he is an agent although the policy to be issued may not be signed by him. *Robinson v. Union Automobile Ins. Co.,* 112 Neb. 32; *Barrett v. Northwestern Mutual Life Ins. Co.,* 124 Neb. 864. And it is held that, in procuring applications for insurance, he is the agent of the company, and not of the insured, as to any representations and statements made in preparing applications. *State Ins. Co. v. Jordan,* 29 Neb. 514.

The common law of England contained nothing rendering it necessary that contracts of insurance should be in writing. *Sanborn v. Fireman's Ins. Co.,* 16 Gray (Mass.) 448, 77 Am. Dec. 419; *Commercial Mutual Marine Ins. Co. v. Union Mutual Ins. Co.,* 19 How. (U. S.) 318, 15 L. Ed. 636.

A few early cases declared parol contracts of insurance void on the ground that they would encourage fraud. Such cases were found in Missouri, Louisiana, Ohio, Pennsylvania, Arkansas, and Kentucky, but later cases can be found upholding them in several of these states. So far as the law is now concerned, a parol contract of insurance is valid, in the absence of a statutory requirement, provided the parol contract is complete and the minds of the parties have met as to all of the essential elements of the contract. 1 Couch, Ency. of Insurance Law, secs. 78-81; 1 Cooley, Briefs on Insurance (2d ed.) 533-561.

It has been held that it is within the apparent scope of the authority of an agent, with power to solicit insurance and deliver policies and collect premiums, to make an oral contract of insurance, which is binding upon the company, unless the insured had knowledge of circumstances suffi-

cient to put the insured upon inquiry. *Georgia Casualty Co. v. Bond-Foley Lumber Co.*, 187 Ky. 511; *Hahn v. Guardian Assurance Co.*, 23 Or. 576, 37 Am. St. Rep. 709; 2 Couch, Ency. of Insurance Law, secs. 526, 527; *Mathers v. Union Mutual Accident Ass'n*, 78 Wis. 588; *Hertz v. Security Mutual Ins. Co.*, 131 Minn. 147; *Anderson v. Northwestern Fire & Marine Ins. Co.*, 51 N. Dak. 917.

The scope and extent of the agent's authority is shown, not merely by reference to his title or to his written commission or credentials, but by the business which he is permitted to do and perform, and does do and perform in the company's name or by its apparent acquiescence and consent. *Stoner v. First American Fire Ins. Co.*, 246 N. W. (Ia.) 615.

The question of an oral, or parol, insurance contract is discussed at length, with citations from practically all the states of the Union, in a note in 15 A. L. R., beginning on page 995, and a continuation of that note is found in 69 A. L. R., beginning on page 559. A discussion of temporary insurance, pending the approval of the application or the issuance of the policy, is found in the helpful note in 81 A. L. R. 332.

This question has been before the Nebraska supreme court a number of times, and while the holdings are not entirely uniform in every respect, yet nearly every phase of an oral insurance policy has been discussed, and the leading cases will be reviewed briefly. The first case was *McCann v. Aetna Ins. Co.*, 3 Neb. 198. It appears that, upon October 11, 1865, while the steamer Sunset was lying at the wharf in St. Louis, Missouri, the plaintiff applied to the agent of the defendant company in Nebraska City for insurance upon his one-half of said steamboat. The agent said he could not issue the policy, but would take his application and send it in. No premium was paid. Six days later the steamboat, on its way up the Missouri, was wrecked and destroyed. Oral notice of loss was given to the agent at Nebraska City. Six days after the destruction of the boat, the premium was tendered, but not

received. When the case reached this court, in May, 1871, Chief Justice Mason, having been engaged as counsel, was disqualified, and Justice Lake, having tried the case in Otoe county, was likewise disqualified, and the case was therefore held until the January term, 1874, when the opinion was rendered by Justice Gantt, concurred in by Justice Maxwell. Many cases are reviewed in the briefs published with the opinion, and it is clearly shown that a parol contract of insurance will be valid if it is clearly established, but that such evidence was lacking in this case, as it was in the case of *Kor v. American Eagle Fire Ins. Co.*, 104 Neb. 610.

*Nebraska & Iowa Ins. Co. v. Seivers*, 27 Neb. 541, involved a parol contract to insure or issue a policy, covering a hotel building and barn, and it was held that proof of loss arising under such a parol contract of insurance need not follow the requirements of the policy which would have been issued in such case. Recovery was had by verdict of the jury, and the same was affirmed.

*Carter v. Bankers Life Ins. Co.*, 83 Neb. 810, was an action for damages, appealed from Valley county, for failure to issue a policy of life insurance, for which a note was given for the first year's premium. The medical examination was duly passed, and the defendant company informed the insured that it had accepted his application, and would issue a policy on condition that he would consent to accept a 10-payment policy, with a premium of $48.10, instead of a 20-payment policy, with a premium of $31.10, which had been paid. The insured consented, and gave his check for $17 additional, and died less than 60 days thereafter, before the policy had been delivered. It was held that section 15, ch. 52, Laws 1903, requiring life insurance policies to be signed by the president and secretary, applied only to companies formed under the provisions of that act, and that the oral contract of insurance sued on was not obnoxious to our statute of frauds, as it might terminate within one year.

In *Rankin v. Northern Assurance Co.*, 98 Neb. 172, the

defendant entered into a contract, partly verbal and partly in writing, with the plaintiff's wife, to insure her life for $1,000 and three weeks later she died. The company admitted a written application had been made, and $5 paid upon the first premium, but it was proved that the balance of the first year's premium had been accepted in the form of a note. It was held that the contracts of a local agent, if within the apparent authority of the agent, and entered into in good faith by the insured, are binding upon the company. A similar holding was entered in the case of *Clark v. Bankers Accident Ins. Co.*, 96 Neb. 381.

*Muhlbach v. Omaha Life Ins. Co.*, 107 Neb. 206, was an action upon an oral contract of insurance on the life of Nicholas Muhlbach, who had signed the application on January 17, 1919, and paid $162.40 for the first year's premium. Four days later he was killed in a fall from a windmill. In this case, in the receipt given it provided that the insurance should be effective on the date of the receipt and the application, if approved by the medical director, and it also states that, if the policy shall not be issued, the premium paid shall be returned, and it was held that there was no oral contract of insurance, because the minds of the parties had not met on definite terms to that effect.

In *Cline v. Fidelity Phenix Fire Ins. Co.*, 113 Neb. 481, an oral contract to renew fire insurance upon a barn was held to be good, notwithstanding it was in violation of the private instructions or limitations upon the agent's authority, of which the insured had neither actual nor constructive knowledge.

*Glatfelter v. Security Ins. Co.*, 102 Neb. 464, was on an oral contract for fire insurance, made on May 8, 1914, but no premium was paid and no policy delivered, and the property was destroyed by fire December 27. The jury returned a verdict for the plaintiff, and it was held that, if the oral agreement is definite as to all of the material terms of the contract, it can be enforced.

We are convinced that the instructions submitted fairly

set forth the law of our state upon the subject of oral contracts of insurance, and that there is no reversible error in any instruction given. While there is a general feeling of prejudice against oral contracts of insurance, yet this court has upheld them in many decisions, some of which we have reviewed. Oral contracts attach in much the same manner, and according to the same principles, as do written contracts of insurance.

Finding no prejudicial errors in the record or judgment entered, the same is hereby affirmed. Attorney's fee taxed in this court at $100, as part of the costs.

AFFIRMED.