FAE E. ADOLF, APPELLANT, v. UNION NATIONAL LIFE
INSURANCE COMPANY, A CORPORATION, APPELLEE.
101 N. W. 2d 504

Filed March 11, 1960. No. 34720.

*Wellensiek & Weaver, Healey, Wilson & Barlow,* and *Patrick W. Healey,* for appellant.

*Perry, Perry & Nuernberger* and *Edwin C. Perry,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action on an alleged contract of insurance to recover the sum of $20,000. At the close of all the evidence the trial court directed a verdict for the defendant, and the plaintiff has appealed.

The plaintiff testifies that on March 27, 1952, the insurance company entered into a contract of insurance with Calvin G. Boyd by which the life of Boyd was insured for $20,000. Plaintiff at that time was the wife of Boyd and the named beneficiary in the alleged contract of insurance. A formal policy of life insurance was never issued by the insurance company. The applicant, Calvin G. Boyd, died in an automobile accident on June 9, 1952. The plaintiff as beneficiary brings the action to recover $20,000 under the terms of the alleged insurance contract.

The evidence shows that E. A. Sommerville was a soliciting agent for the insurance company. Some time prior to March 27, 1952, the agent solicited Boyd to purchase a policy of life insurance. On March 27, 1952,

his solicitation culminated in an application for life insurance in the amount of $20,000. A written application was completed and signed by Boyd. On the oral representation of the agent that the insurance would be immediately in force if he paid the first annual premium in cash, Boyd gave the agent his check for $128, which was admittedly the full amount of the first annual premium. The agent thereupon issued a receipt to Boyd, which together with the application is alleged to constitute a contract with the insurance company for temporary insurance.

The evidence shows that the agent arranged for Boyd to have a medical examination by Dr. Donal H. Morgan at McCook on April 1, April 14, May 7, and May 19, all in 1952. An appointment was also made with Dr. Robert T. Jones for a Sunday in May subsequent to May 19 and prior to Boyd's death. Boyd failed to keep any of these appointments and at no time submitted to a medical examination. The evidence shows that the insurance company advised the agent on several occasions that the report of the medical examination was required before the company could act on the application. The agent testifies that he repeatedly talked with Boyd about the necessity of his submitting to a medical examination. On May 12, 1952, the company wrote Boyd direct in which it said: "We are writing to you about completing your medical examination so that we may take action upon your application for insurance in our company." An acceptance of the application was never indicated, and a formal policy was never issued by the company. The company retained the premium, however, and tendered it back after the death of Boyd.

The plaintiff testifies that she heard the agent tell the applicant that the insurance would be immediately effective if the first annual premium was paid. The agent denies that he made this statement, but we shall consider the case as if the statement was made. We

think this evidence on the part of the plaintiff should have been excluded for two reasons. First, it was an attempt to vary the terms of the written contract. Second, it was outside the scope of the authority of the soliciting agent to thus bind the company under the very terms of the application which provided: "This application * * * and any policy or policies issued in consequence thereof shall constitute the entire contract of insurance and the Company shall not be bound by any statements, promises or information made or given by or to any agent or other person unless the same be reduced to writing, submitted to the Company at its Home Office, and made a part of such contract."

The plaintiff relies upon Whitehall v. Commonwealth Casualty Co., 125 Neb. 16, 248 N. W. 692, and Echols v. Mutual Life Ins. Co., 106 Neb. 409, 184 N. W. 58. The Whitehall case involved a policy of accident insurance. The application was signed, the premium paid, and the policy issued, although there was a question as to whether or not it had been actually delivered to the applicant before the accident occurred for which suit was brought. It was held that the soliciting agent and a general agent of the company, who was present when the application was taken, had authority to make an oral contract of insurance. There is no evidence in the instant case that the soliciting agent had any authority to vary the terms of the application and conditional receipt contrary to the quoted provision of the application. In the Echols case a waiver of the time of payment of the first premium was shown which was expressly concurred in by the general agent of the company. The policy was issued and not delivered promptly by the soliciting agent through no fault of the applicant. We fail to see how these cases are pertinent to the situation in the case at bar. The plaintiff is clearly bound by the provisions of the application signed by the applicant. It is a part of the contract, if it can be said that a contract of insurance was actually made. Muhlbach v.

Omaha Life Ins. Co., 107 Neb. 206, 185 N. W. 447. There is no indication of a waiver by the company of any of the provisions of the application or the conditional receipt. In the absence of a proper waiver, such provisions are an effective part of the proposed insurance contract.

The controlling question is whether or not there was a contract of insurance in existence between the defendant and the applicant at the time of the latter's death. The only competent evidence of a contract of insurance is the application signed by the applicant, a receipt signed by the soliciting agent on a form provided by the company, and the payment of the first annual premium. The retention of the first annual premium by the defendant does not prejudice the rights of the insurance company when it is retained under a provision of the receipt, as here, that if no insurance is issued the premium will be returned upon demand and the surrender of the receipt. Muhlbach v. Omaha Life Ins. Co., *supra*.

It is the contention of plaintiff that the acceptance of the premium, and the issuance of the receipt containing the provisions that it did, created a valid and existing contract of temporary insurance which was in full force until a formal policy was issued or until the application was rejected and the return of the premium tendered during the lifetime of the applicant. The provisions of the receipt therefore become a controlling consideration in the case.

The application appears on a regular form furnished by the insurance company. A blank form of receipt was attached to the application blank which was detachable by means of a perforated line. The soliciting agent filled in the blanks in the receipt, detached it from the application, and gave it to the applicant when the first annual premium was paid. Across the top of the receipt is the following: "Receipt To Be Given Applicant When Settlement Toward First Premium Is Made

At Time of Application." Across the end of the receipt in heavy type are the words: "CONDITIONAL RE-CEIPT." The pertinent part of the body of the receipt provides: "If the entire first premium called for in the proposed policy has been paid at the time of making such application, the insurance applied for shall take effect on the date of this receipt provided the application be completed as agreed therein and unconditionally accepted by the Company at its Home Office and provided also the applicant is on this date a risk acceptable to the Company under its rules, limits and standards on the plan and for the amount applied for and at the standard rate of premium in accordance with the published rates of the Company; otherwise the payment evidenced hereby will be returned upon demand and surrender of this receipt."

The heading on the receipt does not indicate a provision for temporary insurance, and the words in heavy type across the end clearly indicate that the receipt was conditional. The quoted portion of the receipt is clear and explicit, and cannot be said to be ambiguous. It provides that liability exists if certain conditions are fulfilled before a formal policy is issued. These conditions were not fulfilled. The plaintiff does not contend otherwise.

It is the contention of plaintiff that the quoted portion of the receipt would indicate to an unsuspecting and untutored applicant that he had temporary insurance while the insurance company was considering his application; that, while the real nature of the receipt might well be understood by underwriters, it should be read in the light of the fact that it was to be submitted to persons unacquainted with the niceties of life insurance; and while a person must read what he signs and is chargeable if he does not, yet where insurers seek to impose upon words of common speech an esoteric significance intelligible only to their craft, they must bear the burden of any resulting confusion. The following

cases, among others, are cited in support of this contention: . Liberty Nat. Life Ins. Co. v. Hamilton, 237 F. 2d 235; Metropolitan Life Ins. Co. v. Grant, 268 F. 2d 307; Hart v. Travelers Ins. Co., 236 App. Div. 309, 258 N. Y. S. 711; Gaunt v. John Hancock Mut. Life Ins. Co., 160 F. 2d 599.

Under the law of this state the acquiring of insurance has always been a matter of contract. Insurance is a contract by which one party assumes specified risks of the other party for a consideration, and promises to pay him or his beneficiary an ascertainable sum of money on the happening of a specified contingency. It is true, however, that an insurance contract will be construed against the insurance company when the contract or policy is indefinite or ambiguous because it drafted the contract or policy and is responsible for any indefiniteness or ambiguity therein. But where the contract is plain and unambiguous in its meaning the contract will be enforced according to its terms. Unless this be the law, the attaching of liability on an insurance company, contrary to the plain meaning of the contract, would be nothing less than a rewriting of the liability provisions of the contract. It appears to us that it would be a dangerous innovation of contract law to hold that one is not bound by what he signs, and that that which he fails to read or understand should be read out of the contract. We dealt with this subject in Reid v. Bankers Life Co., 148 Neb. 604, 28 N. W. 2d 542, wherein we said: "It seems to me that some courts, of the very highest respectability and learning, have taken judicial notice of matters which they were not by law authorized to judicially know, and have gone so far in holding insurance companies liable as to result in the application of different rules of contract law to them than would have been applied to individuals under the same circumstances. I cannot agree that this may rightfully be done."

In the last case cited we quoted the following with

approval from Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140: "Of course if the insured can prove that he made a different contract from that expressed in the writing he may have it reformed in equity. What he cannot do is to take a policy without reading it and then when he comes to sue at law upon the instrument ask to have it enforced otherwise than according to its terms. The court is not at liberty to introduce a short cut to reformation by letting the jury strike out a clause."

The applicant in the instant case agreed to submit to a physical examination if the company did not consider his statements in the application sufficient. The evidence shows that a medical examination was required, not only by the evidence of the soliciting agent, but by a letter from the home office to the applicant under date of May 12, 1952. The applicant failed to comply with this part of his agreement. The record shows that the applicant was 27 years of age, 6 feet 3 inches in height, and weighed 270 pounds. It is not disputed that the applicant ·was overweight and not entitled to insurance at standard rates under the Build Chart used by the defendant and commonly used by underwriters. He was not within the conditions set forth in the conditional receipt on this point. It is clear that the application was never approved nor accepted by the insurance company as required by the terms of the conditional receipt. He was not a risk acceptable to the company under its rules, limits, and standards existing at the time as established by the evidence, and this constitutes a noncompliance with a condition contained in the conditional receipt. The application provided that the company should have 60 days to consider the application, and if a policy was not delivered within 60 days the application was to be considered as declined by the company. While this provision appears to have been waived, the fact remains that the applicant, by his failure to submit to a medical examination,

delayed the consideration beyond the specified 60 days. On June 9, 1952, the date of the death of the applicant, the company rejected the application.

Under this state of the record the applicant had no contract for temporary insurance because the conditions precedent necessary to the attaching of liability, as set forth in the conditional receipt, were never met. Since no liability for temporary insurance ever attached, and a formal insurance policy was never issued, the insurance company assumed no liability and it could properly reject the application as it did.

The trial court concluded that no contract for temporary insurance was entered into as a matter of law and directed a verdict against the plaintiff. We think the trial court was correct in so doing, and the judgment is affirmed.

AFFIRMED.