Gerald C. O'NEIL, Appellant,

v.

**GLENS FALLS INDEMNITY COM-
PANY, Appellee.**

No. 17083.

United States Court of Appeals
Eighth Circuit.

Nov. 15, 1962.

Edwin Cassem, of Cassem, Tierney, Adams & Henatsch, Omaha, Neb., for appellant.

Thomas J. Walsh, Omaha, Neb., Robert W. Haney and Benjamin M. Wall, Omaha, Neb., on the brief, for appellee.

Before JOHNSEN, Chief Judge, and MATTHES and RIDGE, Circuit Judges.

MATTHES, Circuit Judge.

In this diversity action controlled by the substantive law of Nebraska, the basic issue for determination is whether a $10,000 malpractice liability insur-

ance policy issued by appellee (defendant) provided coverage to appellant (plaintiff) for damages arising out of the professional conduct of plaintiff's assistant.[1] The case, tried to the court, resulted in the finding that there was no coverage and a judgment in favor of defendant. We affirm.[2]

The policy, effective for a period of one year from January 1, 1949, to January 1, 1950, contained an Insuring Agreement (I) in which defendant obligated itself:

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him or his estate by law for damages arising out of malpractice, error or mistake in the rendering of professional services, committed during the policy period by the insured, acting personally or by an assistant, in the practice of his profession as described in the declarations. 'Assistant' as used herein shall not include a physician, surgeon, dentist or X-ray technician employed by the insured except while acting under the insured's instructions (a) in the care and treatment of a patient personally attended by the insured or (b) in the performance of an autopsy."

The facts giving rise to the controversy were stipulated and in summary established that: In July, 1948, Dr. O'Neil, a qualified specialist in pediatrics, employed Dr. Anthony J. Lombardo, a licensed physician who had received special training in pediatrics. Under the contract of employment Dr. Lombardo was paid a salary and a commission on house calls, but was not permitted to have a private practice of his own except with the special permission of Dr. O'Neil.

On or about Saturday, March 19, 1949, Dr. O'Neil left Omaha, Nebraska, for the week-end and told Dr. Lombardo, in substance: "In the meantime, take care of anything that turns up."

Dr. Lombardo received a telephone call on Sunday morning, March 20, 1949, to the effect that Dr. O'Neil's services were desired for Thomas Corcoran, a newborn infant at St. Catherine's Hospital. Dr. Lombardo on that day responded to the call, examined the infant, diagnosed its condition, and prescribed medication. Only a student nurse was on duty at the time, and she did not administer the medicine prescribed by Dr. Lombardo prior to the time she went off duty at 3 o'clock p. m. Later in the evening another student nurse, disregarding a warning on the ampoule that it was for intravenous use only, injected the medicine into the muscles of the infant's buttock, causing the infant's leg to become crippled and deformed.

Dr. O'Neil returned to Omaha on Sunday evening, March 20, 1949, and on the next day went to St. Catherine's Hospital, where he was informed that a "terrible blunder" had been committed by a student nurse.

Thereafter, Dr. O'Neil reported the matter to defendant, who, after conducting an investigation, advised Dr. O'Neil by letter of November 3, 1949, that he was not entitled to coverage under the policy for the incident here involved.

In 1955, a suit praying damages in the amount of $625,000 was filed on behalf of the Corcoran child against both Dr. O'Neil and Dr. Lombardo. Pursuant to

1. Appellee is referred to in this opinion as defendant, the insurance company, or as the insurer. Appellant is referred to as plaintiff, Dr. O'Neil, or as the insured.

2. In the district court, the insurance company moved to dismiss the action for failure to state a claim upon which relief could be granted because the complaint contained no allegation that either Dr. O'Neil or Dr. Lombardo was guilty of malpractice, error or mistake in the rendering of professional services. The motion to dismiss was overruled, and the question litigated was whether the policy provided coverage for Dr. O'Neil under the circumstances involved. Although appellee again raises the issue of the sufficiency of the complaint in this court, we deem it unnecessary to review the question since we find no coverage under the policy.

Insuring Agreement II of the policy,[3] the insurance company agreed to take over and actually did assume the defense of the suit but explicitly disclaimed liability for any amount which Dr. O'Neil might be required to pay. Specifically, defendant's position was that under Insuring Agreement I, above set out, Dr. Lombardo was not acting as an "assistant" within the meaning of the policy while treating the child whose injury precipitated the suit, and that, consequently, the policy would not provide coverage for damages due to any liability that might be imposed upon Dr. O'Neil.

Negotiations for settlement of the Corcoran suit were carried on between attorneys for plaintiff in that action and Dr. O'Neil's *personal* attorneys. The insurance company refused to enter any of the negotiations for settlement, standing firm in its position that the policy merely obligated it to conduct Dr. O'Neil's defense. Finally, an agreement was reached between plaintiff and Dr. O'Neil whereby he settled the suit for a total of $10,000, made the payment from his personal funds, and secured complete release of liability in exchange. This action was brought to recover from the insurance company the sum of $10,000 plus $3,783 as attorneys' fees and interest.

The trial court in its unreported memorandum opinion concluded that the language of the policy "is sufficiently clear and unambiguous to exclude coverage of the professional services which Dr. Lombardo rendered to the Corcoran baby for the reason that Dr. Lombardo was here independently treating a patient who had never before been treated by Dr. O'Neil."

The precise question for decision is whether, on the facts, Dr. Lombardo, within the meaning of the policy, was an "assistant" of insured, "acting under the insured's instructions in the care and treatment of a patient personally attended by [Dr. O'Neil]."

Plaintiff recognizes that a contract of insurance may, by appropriate terms, limit the risk the insurance company assumes, and that the contract may exclude liability under certain conditions. However, plaintiff invokes the familiar principle that language used in a policy of insurance should not be considered in accordance with what the insurance company intended the words to mean, but rather in accordance with what a reasonable person occupying the position of insured would have understood them to mean; that where the contract, prepared by the insurance company, contains provisions reasonably susceptible to different interpretations, the one favorable to the insured should be adopted. Morton v. Travelers Indemnity Co., 171 Neb. 433, 444, 106 N.W.2d 710, 718 (1960); Lonsdale v. Union Insurance Co., 167 Neb. 56, 91 N.W.2d 245 (1958). This principle, expressed in different language, has been enunciated in numerous other cases. Thus, in Adolf v. Union National Life Ins. Co., 170 Neb. 38, 101 N.W.2d 504 (1960), the Supreme Court of Nebraska stated that an insurance contract, drafted by the insurance company, will be construed against the insurance company when the policy is ambiguous or uncertain. But, where the contract is unambiguous in its meaning, the contract will be enforced according to the plain meaning of its terms and courts may not permissibly re-write the liability provisions of the contract. See also Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416 (1932); Automobile Insurance Co. of Hartford, Conn. v. Denny, 8 Cir., 206 F.2d 401, 403–404 (1953), cert. den., 346 U.S. 898, 74 S.Ct. 223, 98 L.Ed. 399 (1953); Roth v. Western Assurance Co., 8 Cir., 308 F.2d 771.

3. Insuring Agreement II(a) provides that the company shall "defend in his name and behalf any suit against the insured alleging such malpractice, error or mistake and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation of any claim or suit as may be deemed expedient by the company; * * *."

We are not persuaded by plaintiff's argument that the limiting language of Insuring Agreement I is ambiguous and that the policy must therefore be construed to impose upon the insurer the obligation of indemnifying the insured for the settlement payment he made as a result of the alleged malpractice of his assistant.

It is clear to us that the clause " 'assistant' * * * shall not include a physician * * * employed by the insured except while acting under the insured's instructions (a) in the care and treatment of a patient personally attended by the insured * * * " was placed in the contract for the purpose of limiting and qualifying the obligations imposed upon the insurer by the previous clause of the Insuring Agreement. If we were to adopt plaintiff's theory and hold that the policy afforded protection to the insured for the negligence of his assistant while acting under general instructions, then the restricting or limiting clause under consideration would be rendered completely meaningless. We would be transgressing the bounds of judicial province by rewriting the contract agreed upon, and denying effect to the express language of the contract. The qualifying clause provided an explicit safeguard against requiring the insurer to respond for the malpractice, errors and mistakes of the insured's assistant when acting on his own responsibility and without the advice and instructions of the insured. Certainly the skill and experience of the insured were important factors which entered into the issuance of the policy, and we cannot bring ourselves to believe that the parties contemplated that protection would be afforded for malpractice of assistants whose training and skill were wholly unknown to the insurer.

Although when Dr. Lombardo treated the child who had not been "personally attended" by Dr. O'Neil, he was acting under his contract of employment and pursuant to Dr. O'Neil's *general* instructions, such service is insufficient to satisfy the coverage requirements of the Insuring Agreement even though the relationship of master and servant imposed legal liability upon Dr. O'Neil for his assistant's professional conduct.

The case of Seay v. Georgia Life Ins. Co., 132 Tenn. 673, 179 S.W. 312, (1915), decided by the Supreme Court of Tennessee, is apposite and is a very persuasive authority. There, the malpractice policy in question indemnified the plaintiff "against loss from the liability imposed by law upon the assured for damages * * * in consequence of an alleged error or mistake or malpractice by any assistant in the employ of assured while acting under the assured's instructions and occurring while this policy is in force." In response to a call to the insured's office, one of the assistants, acting under general directions and within the scope of his employment, undertook to diagnose and treat the injuries of a miner even though the insured had no knowledge of the particular case. Later, in a malpractice action, the miner recovered a judgment against the insured for the negligence of the assistant and an action was brought to recover on the policy. The Supreme Court of Tennessee held that the assistant was not "acting under the assured's instructions" within the meaning of the policy and denied recovery. Here, as we have previously noted, the limiting clause not only requires the assistant to be acting under the instruction of the insured, but also that he be treating a patient "personally attended" by the insured.

Plaintiff attempts to discount the holding in Seay, supra, stating that "the case has neither been followed nor overruled." We acknowledge that it has not been overruled. However, several recognized authorities have cited it in support of the proposition that an insurer is not liable under a policy that protects the insured for the malpractice of an assistant only while acting under the instructions of the insured, where the assistant, under general instructions, negligently treats a patient not personally seen by the insured and about whom the insured has no knowledge. 29A Am.Jur., Insur-

ance, § 1358 n. 7 at 473–474 (1960); 45 C.J.S. Insurance § 833 n. 76 at 905 (1946); 7 Appleman, Insurance Law and Practice § 4503 n. 99 at 354 (1942); Annot., 35 A.L.R.2d 452, 456 (1954).[4]

We conclude that the trial court's determination was correct and accordingly we affirm.

4. Additionally, the Seay case has often been cited for the rule that while an ambiguous insurance contract, prepared by the insurance company, must be construed in favor of the insured, a policy containing clear language must be construed so as to give effect to the intention and express language of the parties. See, for example, Inman v. Life & Casualty Co., 164 Tenn. 12, 45 S.W.2d 1073, 1074 (1932); Pacific Mutual Life Insurance Co. v. Walt, 198 Tenn. 59, 277 S.W.2d 434, 436 (1955).